## GILMORE v. MERRITT ET AL.

PARTNERSHIP, WHEN ESTABLISHED.—*Liability of Dormant Partner.—Contract.—Evidence.*—In a suit against G. for goods alleged to have been sold and delivered by the plaintiff to said G. and his partners, the following facts were established : B. and C., prior to 1875, had been engaged as partners, under the firm name of B. & C., ostensibly in carrying on a retail store in Baltimore. Upon a credit which they had established in this manner, they purchased goods during certain months of said year, from wholesale dealers in different cities, and among them the plaintiff, upon credit and ostensibly for their said retail business. These goods were shipped to Baltimore and deposited in warehouses, whence said B. & C. secretly, and under cover of a number of fictitious names, shipped them, in the original packages, to the defendant G., who used said fictitious names in receiving, reshipping and selling said goods.

*Held,* that, at the time the plaintiff sold the goods to the firm of B. & C., the defendant G. was a member of said firm, and therefore liable, *ex contractu,* as a member of said firm, to the plaintiff for the goods by him sold to said firm, though he may not then have known that said G. was a member of it;—as a dormant partner, when discovered, is liable for the debts of the firm, the same as an ostensible one.

*Held,* also, that, in such case, entries in the books of a railroad company, proved to be in the handwriting of the person whose duty it was to make such entries, showing the delivery to the consignees of certain goods transported, if relevant, are admissible in evidence, to show the delivery and receipt of the goods in question, as between the parties to such suit.

From the Marion Superior Court.

*D. Turpie* and *H. D. Pierce,* for appellant.

WORDEN, J.—This was an action by the appellees, against the appellant. Judgment for the plaintiffs below at special term, and affirmed at general term.

We take the following statement of the case, and of the general facts therein, from the opinion of the court below, at general term, in affirming the judgment rendered at special term, pronounced by the Hon. JOHN A. HOLMAN, J.:

" The only errors assigned are :

" *First.* That the court in special term erred in overruling appellant's motion to suppress the depositions of the appellees (the plaintiffs ).

" *Second.* That the court at special term erred in overruling appellant's motion for a new trial.

" The first error assigned is included in the motion for a new trial, as one of the reasons therefor, but it cannot be considered under either assignment, because the motion claimed to have been made to suppress the depositions is not presented by a bill of exceptions. *Templeton* v. *Hunter,* 10 Ind. 380 ; *The Toledo, etc., Co.* v. *Speares,* 16 Ind. 52; *Harvey* v. *Sinker,* 35 Ind. 341.

" The only questions, then, for our consideration, arise upon the ruling of the court in overruling the motion for a new trial, excluding from the motion all that relates to the depositions.

" The complaint is simply the common count on *indebitatus assumpsit* for goods sold and delivered. It avers that ' the defendant, Gilmore, from the 1st day of April to the 1st day of August, 1875, was in copartnership with George

Cuttle and William J. Bordly (who are not residents of the State of Indiana), under the firm names and styles of "Cuttle & Bordly," and " Lane, Bacon & Co.," and, as such, said defendant Gilmore, and his said partners became and are indebted to plaintiffs in the sum of twenty-six hundred dollars for goods, wares and merchandise sold and delivered by plaintiffs to said Gilmore and his said partners, as per bill of particulars filed.'

" To this complaint an answer of the general denial was filed, and, the cause having been tried by a jury, judgment was rendered on their verdict for the plaintiffs.

" The main objection presented and insisted upon by the appellant, as to the rulings of the court of which he complains, and which he insists applies to all alike, is, that, under the complaint in this action, evidence tending to show a tort should not have been admitted, nor considered by the jury, or submitted for their consideration in the instructions given by the court.

" Appellant claims that the appellees could not waive the tort and declare in assumpsit, or, if they could do this, the complaint can not be supported upon the trial by evidence of the real facts, if these facts show a tort. He insists that the tort must be waived on the evidence, as well as in the pleadings. Throughout the very lengthy and earnest brief for appellant, we note an entire absence of authorities in support of the position for which he contends.

" The facts, as established on the trial, may be stated, we think, to be as follows : Cuttle & Bordly, for some time prior to 1875, had been engaged as partners, under the firm name of Cuttle & Bordly, ostensibly in carrying on. a retail tea and coffee store in Baltimore. Upon a credit they had established in this way, during the months of March, April, May, June and July, 1875, they went into the wholesale markets of New York, Baltimore and Phil-

adelphia, and purchased upon credit of several months, ostensibly for their retail business,large quantities of coffees, teas, soaps, etc., and had them shipped to Baltimore, where they were deposited, not in their retail store, but in warehouses in different parts of the city. Their purchases were made from different dealers, they rarely, if ever, buying two lots from the same dealer. The plaintiffs sold the teas for which this suit was brought. As soon as the goods, reached the warehouses in Baltimore, Cuttle & Bordly secretly and under cover of a number of fictitious names, seldom or never using the same name twice, shipped them to the defendant Gilmore, under the same fictitious names, at Indianapolis, Cincinnati and Chicago. Some of the fictitious names used in this way by all the parties (including Gilmore) in common were, ' Lane, Bacon & Co.,' ' J. H. Bacon,' ' L. H. Bacon & Co.,' ' Stokes & Co.,' ' Plummer & Co.,' ' Maynard & Co.,' ' G. A. Borff & Co.,' ' M. A. Boyd & Co.,' ' M. F. Prouty,' together with a number of others. These names were used at Baltimore by Cuttle & Bordly in shipping the goods to Gilmore, and by Gilmore at Indianapolis, Chicago and Cincinnati, in receiving, reshipping and selling them. The goods purchased in New York and Philadelphia were never paid for. They were invariably bought on credit, and immediately forwarded by Cuttle & Bordly, in the original packages, to Gilmore. He threw them on the market, and sold them in every instance below the market price, for cash, whenever it could be got, and when he had to take paper immediately discounting it. Having in this manner obtained, in the course of three or four months, goods to the amount of fifty thousand dollars, and converted them into cash, Gilmore, about the 1st of August, 1875, conveyed all his real estate to an irresponsible party, who at once reconveyed the same to Gilmore and his wife. About the same time Cuttle & Bordly invited their creditors to Baltimore to effect a com-

position, but when they found the situation of affairs, and began to inquire for the goods or their proceeds, Cuttle & Bordly left for Canada. A clue being finally obtained, the goods were traced to Gilmore. Gilmore had never previously been engaged in the tea and grocery business, but had been engaged as a flour and feed dealer, and was making money. But he gave this up, to enter into the arrangement with Cuttle & Bordly.

" These are the leading facts developed by the evidence, and they sufficiently indicate the character of the connection between Gilmore and Cuttle & Bordly.

" There were two distinct parts in the scheme. One was to be undertaken by Cuttle & Bordly, and consisted in the purchase of the goods; the other was devolved upon Gilmore, and consisted in the secret disposal of them. From the nature of the scheme, no advantage would accrue to either party, except from the performance of both parts.

" Counsel for the appellant insist that these facts show a tort, and not a contract. To us, they establish clearly, in connection with the vast amount of circumstantial evidence introduced, that the parties arranged to do what they actually did do, to buy the goods through Cuttle & Bordly; that is, that they became partners, bought the goods upon an agreement and understanding, to which Gilmore was a party, and in which he was jointly interested and engaged, and thus became jointly liable for what either one did in the execution of the common undertaking.   3 Greenl. Evidence, 81, sec. 93.

" And being thus jointly liable, it was proper and sufficient that Gilmore should be charged, in the language of the complaint, as a *partner*.

" The averment of the sale is abundantly substantiated by the evidence; not a sale resulting by implication of law from the facts that the defendants wrongfully obtained possession of the plaintiffs' goods and converted them to

their own use, but an *express sale*, in the most ordinary sense of the words. Thus it will be seen that the allegations in the complaint are in full accord with the facts of the case."

It may be observed, that the correctness of the foregoing statement is not controverted by any brief in the cause. Indeed, the only brief filed in the cause is the one filed by the appellant, which was evidently the one used on the hearing of the cause below at general term. As the correctness of the statement is not questioned, we may well act upon it in disposing of the cause.

It appears then, that, at the time the appellees sold the goods to the firm of Cuttle & Bordly, the appellant was a member of that firm. He was therefore liable *ex contractu*, as a member of the firm, to the appellees, for the goods by them sold to the firm, though they may not then have known that he was a member of it. A dormant partner, when discovered, is liable for the debts of the firm, the same as an ostensible one. Wood's Collyer on Partnership, 6th ed., p. 14 and note 1.

On the trial of the cause the plaintiff gave in evidence, over the objection of the defendant, certain entries in the books of certain railroad companies, proved to have been in the handwriting of the person whose duty and business it was to make such entries, showing the delivery to and the receipt by the consignees of certain goods transported. We cannot say that this evidence was not relevant and competent. In some of the various phases of the case, it may have been relevant to show the delivery and receipt of the goods in question; and, if relevant, the entries, as between these parties at least, were competent as tending to show such delivery and receipt. 1 Greenl. Evidence, 13th ed., sec. 115, note 5. Also, secs. 117, 120.

The judgment below is affirmed, with costs.