[L. A. No. 6710. In Bank.—August 29, 1921.]

THE FURLOW PRESSED BRICK COMPANY (a Corporation), Appellant v. BALBOA LAND & WATER COMPANY (a Corporation), et al., Respondents.

[1] APPEAL—SECOND JUDGMENT—ORDER GRANTING NEW TRIAL—RE-VIEW—CONSTRUCTION OF CODE AMENDMENTS.—While the second sentence of section 956 of the Code of Civil Procedure, as amended in 1915, providing that the court may, on an appeal from the judgment, review any order on motion for a new trial, is broad enough, considered alone, to justify the court in reviewing the order granting the new trial in every case, it is apparent from the entire context and purpose of the section, taken in connection with the scheme for appeal adopted by the legislature in 1915, that it was not intended that any order granting a new trial should be reviewed unless it affects the second judgment, and where the entire case is tried *de novo,* the order could not

affect the judgment, however much it might affect the parties to the action.

[2] ID. — ORDERS REVIEWABLE. — Where the order granting a new trial confines the order to certain issues, or, in some other way, enters into and affects the final determination of the case, it can be reviewed upon an appeal from the judgment, and it is only such orders granting a new trial that can be considered on an appeal from the second judgment.

[3] STATUTE OF LIMITATIONS—OPEN BOOK ACCOUNT.—Under section 337 of the Code of Civil Procedure, both prior and subsequent to amendment of 1917, the period of limitation for an action on an open book account is four years.

[4] ID.—MUTUAL OPEN AND CURRENT ACCOUNT—RUNNING OF STATUTE.—With reference to a mutual, open and current account mentioned in subdivision 2 of section 337 of the Code of Civil Procedure, the statute of limitations runs from the date of the last item shown in the account.

[5] ID.—OPEN BOOK ACCOUNT—RUNNING OF STATUTE.—Under subdivision 2 of section 337 of the Code of Civil Procedure, as amended in 1917, the statute of limitations, in the case of an open book account, begins to run from the date of the last item shown in the account.

[6] OPEN BOOK ACCOUNT — MUTUAL, OPEN AND CURRENT ACCOUNT — DISTINCTION.—An open book account is differentiated from an open, mutual and current account solely by the fact that to constitute an open, mutual and current account it is necessary that items other than cash appear as credits upon the account, whereas in an open book account cash payments alone are sufficient to characterize the account as an open book account.

[7] ID.—PAYMENT ON OPEN BOOK ACCOUNT—TOLLING OF STATUTE OF LIMITATIONS.—In view of the fact that the legislature fixed a different period of limitation upon an open book account from an ordinary account, a payment made and entered upon the open book account tolls the statute of limitations, notwithstanding the provision of section 360 of the Code of Civil Procedure requiring a written acknowledgment.

[8] PARTNERSHIP—OPEN BOOK ACCOUNT—NAME OF INDIVIDUAL MEMBER—STATUTE OF LIMITATIONS.—Where a member of a partnership with the consent of his copartners carried on the partnership business, an open book account against him in his own name for partnership goods was such an account as to his copartners within the meaning of the statute of limitations.

6.   Mutual accounts, what are, note, Ann. Cas. 1913D, 816.

8.   What constitutes an open, current account within the statute of limitations, note, 1 A. L. R. 1060.

[9] Id.—Acknowledgment of Partnership Indebtedness—Letter of Partner—Tolling of Statute as to Copartners.—A letter written by such a partner on a letter-head showing the names of all the partners referring to an indebtedness charged against him in his individual name as a partnership indebtedness was an acknowledgment signed by the party to be charged thereby within the meaning of section 360 of the Code of Civil Procedure sufficient to start another four-year period under the statute of limitations as against the copartners.

APPEAL from a judgment of the Superior Court of Los Angeles County. Lewis R. Works, Judge. Reversed.

The facts are stated in the opinion of the court.

Simpson & Simpson for Appellant.

W. N. Goodwin and Goodwin & Morgrage for Respondents.

WILBUR, J.—This is an action to recover from the defendant, Balboa Land & Water Company, alleged to be a corporation, but in fact a partnership, E. J. Louis, J. P. Greeley, E. E. Richardson, F. W. Beckwith, a balance of $808.15, upon an open book account for brick and mineral ore sold by the plaintiff to defendants for a building being erected by them at Balboa. The case was decided against the plaintiff on the statute of limitations. The original complaint was filed April 19, 1917, but was superseded by an amended complaint served on defendants May 9, 1918, and filed on May 15, 1918, the date of the first trial. It was stipulated that the defendants might answer thereto at any time prior to May 15th. The answer was filed May 17, 1918. The answer contained a general denial and alleged that the claim was barred by subdivision 2, section 337, and subdivision 1, section 339, of the Code of Civil Procedure.

Before the first trial, on April 15, 1918, a written agreement had been entered into between the parties stipulating that the only issues in the action to be determined by the court were, "First, the question as to whether or not the statute of limitations is a bar to the cause of action set up in plaintiff's complaint; second, a determination of the quantity of brick sold and delivered by plaintiff to defendants, which latter question by said stipulation was to be deter-

mined by two referees selected by the parties.'' The referees filed their report and it was stipulated in open court to be correct. The cause was then submitted upon the statute of limitations. The court decided that the action was not barred and gave judgment for the plaintiff for $808.15 and interest amounting to $287.09. Thereafter, a motion for a new trial was made by the defendants and granted. The new trial was had on the twenty-sixth day of November, 1918. It was also stipulated that the cause of action set forth in the second count was set up for the first time in the amended complaint filed May 15, 1918. On the new trial the plaintiff offered in evidence the stipulation of April 15, 1918, as to the issues between the parties. The defendants objected to the use of the stipulation as evidence on the ground that after it had been entered into the complaint had been amended and for the first time set forth the cause of action contained in the second count thereof. Plaintiff insisted that the trial be conducted in accordance with the stipulation, but the court refused the request and made an order releasing defendants from the stipulation and sustaining defendants' objection thereto. The court apparently acted solely upon the theory that there had been a change in the pleadings which justified the rejection of the stipulation. It appears, however, that the stipulation had been used on the previous trial, after the amendment of the complaint. The original complaint is not set out in the transcript, but it is fairly inferable from the stipulation and from the evidence on the trial that the original complaint was to recover for the purchase price of the same brick and ore. The plaintiff did not ask for a continuance on the ground of surprise at the ruling of the court, and introduced other evidence in support of its claim. At the close of the plaintiff's evidence the defendants' motion for a nonsuit was granted. Findings of fact and conclusions of law were made wherein it was found that the Balboa Land & Water Company was not a corporation; that the allegations of the amended complaint were untrue. The court further found that plaintiff's cause of action was barred by subdivision 1, section 339, and subdivision 2, section 337, of the Code of Civil Procedure. Thereupon, judgment was rendered that plaintiff take nothing by the action and purporting to dismiss the action.

It appears from the record that the original controversy between the parties was as to whether or not all the brick the plaintiff claimed to have shipped to defendants had been delivered to them, the defendants claiming that there was one carload short. There was never any question as to the correctness of the account except as to the amount of brick actually delivered to defendants. On this subject E. J. Louis, who acted on behalf of the other defendants, testified that he had checked over the accounts and had satisfied himself that they were correct, with the possible exception of one carload of brick, and that they were unable to determine whether that carload of brick was received by the defendants. The Balboa Land & Water Company was not a corporation, but was an association or copartnership composed of E. J. Louis, F. W. Beckwith, J. P. Greeley, and E. E. Richardson. E. J. Louis testified that he had acted as general manager in conducting the affairs of the defendants in the construction of the building , at Balboa, and that practically all correspondence, payments of money, etc., had been taken care of by him or had passed through his hands. It appears that a Mr. Butler ·called up the president of the plaintiff corporation and left an order on behalf of the defendant, Balboa Land & Water Company, for the shipment of seven cars of sand lime brick to the Balboa Land & Water Company. Mr. Butler informed the plaintiff that the defendants were all interested in the Balboa Land & Water Company; that thereupon the president of the plaintiff corporation made in the account-book of the plaintiff corporation the following entry: "Mch. 25-13. E. J. Louis, Sec. Balboa Land , & Water Company, Balboa. Main 2217. I. W. Hellman Bldg. Ship 7 cars sand lime brick No. 1, 19.70. No. 2, 11.70. 1st car about Tuesday," and thereafter entries were made in the books of the plaintiff showing shipments of six cars of brick. In each item the name of E. J. Louis is entered, together with the character of brick and the price per thousand. The last item of brick furnished is April 19, 1913. On April 15, 1913, a charge for "mineral ore" amounting to $36.50 was entered in the books. The following payments were entered in the account: "January 19, 1913, Cash, $700, August 4, 1913, $220, August 13, 1914, $1.00." Evidence was given that the payment of August 4, 1913, was by the personal check of

defendant F. W. Beckwith, mailed to the plaintiff by E. J. Louis and the payment of August 13, 1914, was by the personal check of E. J. Louis.   Certain letters were written by E. J. Louis to the plaintiff in connection with the account. A letter of August 12, 1914, accompanying the check for one hundred dollars above referred to, addressed to the plaintiff and signed by E. J. Louis is as follows: "Inclosed please find check #401 in the sum of $100.00, which kindly credit for the brick furnished for the Balboa building, sending receipt to me."   A letter dated October 27, 1914, addressed to the plaintiff, signed by E. J. Louis, stated that the discrepancy of one carload of brick was being considered; that the associates would meet and try to determine what had become of the disputed carload of brick.   He closed as follows: "We are just as anxious to clear this matter up as you can be, only we want to be sure we are not going to pay for something we did not get, and we feel quite sure you do not wish us to do otherwise."

On November 13, 1914, under the letter-head of the Balboa Land & Water Company, which letter-head showed the names of all the defendants, E. J. Louis addressed the plaintiff admitting the receipt of five carloads of brick and stated that three were unaccounted for, and adding: "The writer wishes to co-operate with you in every way to expedite the adjustment of this account, and hopes you will exercise just a little bit more patience and he believes it will be done."

On November 19, 1914, E. J. Louis addressed to plaintiff another letter saying that one carload, number 5085, had not been delivered to them, and stating: "I am sending a copy of this letter to Balboa and hope that we are on the track of these deliveries, and that we will be able to determine very shortly who received the brick."

On November 24, 1914, a letter was addressed by E. J. Louis to plaintiff's attorneys, in which he states: "I incline to believe that Mr. Wold [plaintiff's president], under whose instructions you are acting, wants nothing more than is due him, and so far as we are concerned we want to pay every dollar which we are justly owing."   The letter then proposed that Mr. Wold meet with them on the Sunday next in order to determine the amount of the claim due, and concludes as follows:

"If we can then agree on the correct amount, I firmly believe the matter of settlement can be adjusted.

"Hoping that no unnecessary expense will be incurred, I remain,

"Very truly,

"E. J. Louis."

On December 29, 1914, another letter was addressed by Mr. Louis to plaintiff's attorneys stating among other things as follows: "We wish to reiterate that it is our desire to pay your client for every brick which we used or sold for their account and which is in keeping with our arrangement in the early part of 1913, and can be disclosed by correspondence on file in our office, and, we assume, as well in that of your client." Then follows the suggestion that the attorneys of the respective parties get together and fix the amount due.

Appellant's first contention is that the trial court was in error in granting the defendants' motion for a new trial after the first judgment in the case. Section 963 of the Code of Civil Procedure, as amended in 1915, provides for an appeal "from an order granting a new trial in an action or proceeding tried by a jury where such trial by jury is a matter of right," but does not provide for an appeal from an order granting a new trial after trial by the court sitting without a jury. Section 956 of the Code of Civil Procedure provides that "Upon an appeal from a judgment the court may review the verdict or decision, and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment, or which substantially affects the rights of a party. The court may also on such appeal review any order on motion for a new trial. The provisions of this section do not authorize the court to review any decision or order from which an appeal might have been taken." The second sentence was added by the amendment of 1915, so that after that amendment in order to review an order denying a motion for a new trial it was necessary to do so by an appeal from the judgment. It is contended that the order granting the new trial in this case was erroneous, for the reason that the questions raised by the motion were questions of law which could have been determined by a motion to amend the conclusions of law and for judgment upon the findings

(Code Civ. Proc., sec. 663), or an appeal from the judgment, and that for that reason the order granting the new trial was erroneous. It may be conceded that the questions raised upon the motion for a new trial were not proper subjects for consideration upon such a motion and that the order granting the new trial was therefore erroneous. [1] The question is whether or not upon an appeal from the second judgment rendered upon the second trial the error in granting the motion for a new trial can be reviewed. The purpose of the amendment to sections 956 and 963 of the Code of Civil Procedure, with reference to appeals from orders granting or denying motions for new trial, was to expedite the business of the courts and avoid delays incident to appeals. Previous to that amendment orders granting motions for new trials were so largely discretionary with the trial court that an order granting a new trial was rarely reversed. As a result most appeals from such orders merely served to delay the final trial of the case. It was evidently thought by the legislature to be more expeditious and economical to do away with the appeal from the order granting a new trial where there had been no trial jury and thus to allow the parties to try the case *de novo* than to permit such appeals.

If appellant's point that the order granting a new trial was erroneous can be considered upon an appeal from the second judgment where the order granting a new trial set the whole case at large, then, as is made evident by this appeal, there is a double chance of reversing a case where a new trial has been granted because the errors on both trials can be considered. We think this is an erroneous view of the law. While the second sentence of section 956 of the Code of Civil Procedure, as amended in 1915, providing that the court may, on an appeal from the judgment, review any order on motion for a new trial, is broad enough, considered alone, to justify the court in reviewing the order granting the new trial in every case, we think it apparent from the entire context and purpose of section 956, taken in connection with the scheme for appeal adopted by the legislature in 1915, that it was not intended that any order granting a new trial should be reviewed unless it affects the second judgment, and where the entire case is tried *de novo,* the order granting a new trial could not

affect the judgment however much it might affect the parties to the action. **[2]** Where the order granting a new trial confines the order to certain issues, or, in some other way, enters into and affects the final determination of the case, it could no doubt be reviewed upon an appeal from the judgment, and it is only such orders granting a new trial that can be considered on an appeal from the second judgment. In this connection it is proper to say that the parties apparently concede that the order granting the new trial in this case can be thus reviewed, and therefore discuss the merits of the order granting a new trial. The district court of appeal (second district, first division) held that the motion was improperly granted and ordered the first judgment restored. The case was transferred to this court because the assumption of the parties and of the district court of appeal, although the latter was justified by the acquiescence of the respondents, was fundamentally erroneous, and might lead to a misapprehension of the proper practice in such cases.

### The Statute of Limitations.

The amended complaint was filed within four years after the last payment upon the account, and if the statute of limitations begins to run at the time of the last payment, the suit was brought in time. **[3]** In this action appellant seems to be laboring under a misapprehension as to the effect of the amendment of 1917, for appellant admits that by that amendment of sections 337 and 339 of the Code of Civil Procedure, the statute of limitations upon the account in question was shortened to two years. Respondents are correct in their position that the period of limitation under section 337, subdivision 2, of the Code of Civil Procedure, both prior and subsequent to the amendment of 1917, (Stats. 1917, p. 299), is four years on an open book account. The cause of action upon which the plaintiff seeks to recover was expressly alleged to be upon an open book account. Respondents' contention that the four-year period had elapsed at the time suit was brought is based upon the following line of reasoning: First, that the statute of limitations upon an ordinary account is two years under section 339 of the Code of Civil Procedure; that the account in question did not become an open book account within the meaning of subdivision 2, section 337, until the first payment was

made thereon, to wit, on June 19, 1913 (*Merchants' Collection Agency* v. *Levi,* 32 Cal. App. 595, [163 Pac. 870]); that the account then became an "open" book account and the balance then due became a "balance due . . . upon an open book account," within the meaning of section 337, subdivision 2, of the Code of Civil Procedure, as amended in 1907 (Stats. 1907, p. 599), and that it was barred in four years from June 19, 1913 (sec. 337, subd. 2, Code Civ. Proc.); that the subsequent payments, August 4, 1913, and August 13, 1914, were but partial payments upon a "balance due . . . upon an open book account," and did not, therefore, have an effect upon the running of the statute of limitations. Respondents' position cannot be maintained.

[4] The rule has long been settled in this state with reference to "a mutual, open and current account" mentioned in subdivision 2, section 337 of the Code of Civil Procedure, that the statute runs from the date of the last item shown in the account (*Carter* v. *Canty,* 181 Cal. 749, [186 Pac. 346]). [5] The evident purpose of the amendment, subdivision 2, section 337 of the Code of Civil Procedure, was to put an open book account upon the same basis. [6] Such an account is differentiated from an open, mutual and current account solely by the fact that to constitute an open, mutual and current account it was necessary that items other than cash appear as credits upon the account, whereas, in an open book account cash payments alone are sufficient to characterize the account as an "open book account." If we apply the rule so well established as to "a mutual, open and current account," it would follow that the four-year period of limitations runs from the date of the last payment, in this case August 13, 1914. In most of the states a partial payment upon an account tolls the statute. [7] The rule is otherwise in this state, because of section 360 of the Code of Civil Procedure requiring a written acknowledgment, but it is a reasonable construction of the legislation fixing a different period of limitation upon an "open book account" from an ordinary account to hold that the payment made and entered upon the open book account tolls the statute. It follows that the statute of limitations began to run on this account on August 13, 1914, and that the amended complaint filed May 15, 1918, was within the four years.

With reference to the contention of the respondent that there is no sufficient evidence as to the price of the brick furnished, and, hence, that the nonsuit was proper, it is sufficient to call attention to the testimony of E. J. Louis that the accounts were correct with the exception of the question at issue, namely, the delivery of one carload of brick.

[8] We have not thus far discussed the proposition that the account was charged on the books to E. J. Louis, one of the partners, and that the names of the other partners nowhere appear on the account. In *Wright* v. *Loaiza,* 177 Cal. 605, [171 Pac. 311], suit was brought upon an open book account consisting of one item for funeral expenses. It appeared that this item had been charged upon the books of Wright against W. Y. Loaiza, the defendant, and it was attempted by the action to charge his sister, Dolores Loaiza, upon said account after two years had elapsed. It was held that the action could not be maintained against her, although he was authorized by the appellant Dolores to incur the indebtedness, for the reason that the ''open book account'' was not a charge against her. The court there stated: ''It may fairly be assumed that the idea underlying the enactment of both subdivisions of this section was that a longer period of limitation might well be allowed where the existence of the claim sued upon was supported by some kind of written evidence. Where, on the other hand, the establishment of the contract rests on oral testimony only, the law requires the action to be brought before the lapse of time may prevent the production of witnesses, or impair their memories. If this view be correct, the action against Dolores must be regarded as one upon an oral contract, and not one upon a book account. There is no account or other writing which in any way indicates her liability. To connect her with the transactions at all, resort must be had to parol testimony.'' It was, therefore, held that the period of limitation had expired as to her.

Following this line of reasoning, the account in this case was not an open book account within the meaning of the statute as to anyone except the defendant E. J. Louis, unless the fact that he is a partner and that the indebtedness is a partnership indebtedness differentiates this case from the rule announced in *Wright* v. *Loaiza, supra.* No question is

raised as to the authority of the partner E. J. Louis to bind the partnership. Not only did he have express authority, as he testified, but the law expressly authorized him to act for and bind the copartnership in the transaction of its business and for that purpose to bind the copartners by an agreement in writing (Civ. Code, secs. 2428, 2429). A partnership may be held for an indebtedness entered into on behalf of the partnership in the individual partner's name (30 Cyc. 485), and this is true even if he has given his individual note for such indebtedness. (*Beckwith* v. *Mace,* 140 Mich. 157, [103 N. W. 559].) The only question involved here is whether the account in question is an open book account upon which the statute of limitations does not run for four years against the other partners where the partnership account is inadvertently or, as a matter of convenience, charged to one partner only. The reasons leading to the decision in *Wright* v. *Loaiza, supra,* as to the proof by parol of an agency to enter into the account do not apply. Here the fact of partnership may be readily proven, and the circumstances showing the nature of the indebtedness are readily susceptible of proof and do not usually depend solely upon parol evidence as to the nature of the transaction. It was clearly proper to show that the indebtedness was a partnership one, and the fact that it was charged on the plaintiff's books to one of the partners was sufficient to constitute it a book account within the meaning of our code.

In this connection it is proper to note that, in addition to the testimony of E. J. Louis that the business transactions with reference to the erection of the brick building were carried on by him, defendant J. P. Greeley testified that there was no written agreement between the parties to the association known as the Balboa Land & Water Company, and that he and his associates had permitted the defendant E. J. Louis to attend to matters of business for them and had made no complaint of any of his acts in connection therewith; that he knew that there was a claim asserted against the association by the plaintiff, but knew very little about it. Defendant E. E. Richardson testified that he was a member of the association and that he was not personally present at any time during the construction of the building at Balboa and knew very little about it; that

he had informed his associates that he was willing to abide by whatever action was taken by them in regard to the property; that he knew that E. J. Louis was attending to matters of detail in connection therewith; that he made no objection to any action taken by his associates. It appears from the correspondence between the parties that all the negotiations with reference to the account were carried on by E. J. Louis in his own name and that in all this correspondence he purported to be representing his associates. We thus have a case where one member of a partnership carries on the business in his own name with the consent of his associates and contracts a partnership indebtedness in his own name. It is true that the partners are in a sense agents for one another, but they also have power to act for and on behalf of the partnership, and when they act in partnership business the partnership acts. The partnership is regarded for some purposes as an entity (30 Cyc. 422).

[9] The trial court rejected the letter of November 13, 1914, on the letter-head of the Balboa Land & Water Company, above referred to, except as evidence of the relationship of the defendants. It was rejected as evidence of an acknowledgment of indebtedness. The letter clearly refers to the partnership indebtedness, as such, in the following sentence: ''Personally the writer wishes to see this matter cleaned up at the earliest moment possible, but at the same time, unless delivery can be proven he does not feel that the account should be paid, and *our company* fight it out with the Pacific Electric.'' (Italics ours.) Reference is here made to three cars then in dispute, the delivery of five cars being admitted in the letter. In the inclosure in the letter, a copy of a letter addressed to the Pacific Electric R. R. Company, the plural pronoun is repeatedly used as indicating the consignee of the cars of brick, and closes with the request to ''advise us promptly, as we wish to arrive at a settlement with the Furlow Pressed Brick Company, but cannot do so until we have your reply.'' This acknowledgment was clearly admissible against defendant E. J. Louis. He also had authority to bind the copartnership by his acknowledgment made in the course of business before the statute had run and before dissolution of the copartnership. (*Sears* v. *Starbird,* 78 Cal. 225, 229,

[20 Pac. 547].) The only question remaining is whether it is an acknowledgment "signed by the party to be charged thereby," within the meaning of section 360 of the Code of Civil Procedure, sufficient to start another four-year period under our statute of limitations as against his copartners. In the case of *Union Oil Co.* v. *Purissima Hills Oil Co.,* 181 Cal. 479, [185 Pac. 381], a letter signed by the president of a corporation, written upon the letter-head of the corporation, was held sufficient where the president had authority to incur the indebtedness and his name was shown on the letter-head as president. In the case at bar the names of the four partners were shown upon the letter-head, as well as the name of the copartnership; thus the authority of E. J. Louis to bind the copartnership was shown upon the face of the letter, as well as the fact that he was acting for the copartnership in writing the letter. The acknowledgment was, therefore, sufficient to bind the copartnership upon the authority of *Union Oil Co.* v. *Purissima Hills Oil Co., supra.* (See, also, *Auzerais* v. *Naglee,* 74 Cal. 60, 69, [15 Pac. 371].)

Judgment reversed.

Shaw, J, Sloane, J., Lennon, J., Lawlor, J., and Angellotti, C. J., concurred.

Rehearing denied.

All the Justices concurred, except Shaw, J., who was absent.