[Civ. No. 7125.   Third Dist.   July 27, 1945.]

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Appellant, v. HUBERT G. KUMLE et al., Respondents.

T. B. Scott, G. D. Schilling and Kenneth M. Johnson for Appellant.

Bush & Ackley and H. A. Savage for Respondents.

PEEK, J.—Plaintiff, Bank of America National Trust and Savings Association, which we will hereinafter refer to as the bank, brought this action against Hubert G. Kumle, Donald P. Kumle, Leon Brier and Charles F. Vanciel, doing business under the firm name and style of Battle Mountain Placers, a copartnership, and the partnership itself. Also included as parties defendant were the same individuals with the exception of Vanciel, doing business under the firm name and style of Placer Properties Co., a partnership, and the partnership. The complaint was predicated upon six promissory notes, all executed by Vanciel individually and amounting in the aggregate to $30,000. Twenty-five thousand dollars of the total sum was loaned in installments of $5,000 each between the period of January 24, 1940, and April 9, 1940. The remaining amount of $5,000 was loaned by the bank shortly thereafter. Ultimately the notes were consolidated in one note in the sum of $27,909.60, representing the balance then owing and unpaid, which note likewise was executed solely by defendant Vanciel. The judgment of the court was against the defendant Battle Mountain Placers in the sum of $2,964.95, being the balance then remaining upon the last note of $5,000, and on which the said partnership admitted liability. In all other respects the judgment was in favor of the two partnerships and the individual members thereof with the exception of Vanciel, against whom the judgment was entered individually for the total amount then remaining due together with interest, attorney fees and costs.

The transcript on appeal consists of a lengthy settled statement of facts under rule 7(b) Rules on Appeal and may be summarized as follows: Prior to the negotiations which finally resulted in the present controversy the defendants Hubert G. Kumle, Donald P. Kumle and Leon Brier were engaged in gold dredging under the name of Placer Properties Co., a partnership. The defendant Vanciel and his wife were the owners of certain land near Oakdale, California, which had been leased to the Placer Properties Co. The Kumles and Brier contemplated additional dredging operations at Battle Mountain, Nevada. Vanciel had evidenced an interest in joining with them in a partnership to mine the Nevada property. During the course of their discussions regarding the proposed association it was determined that the amount of Vanciel's

contribution would be the sum of $25,000 or $30,000. The other parties on their part would contribute certain of their dredging machinery and equipment as was available as well as their discovery of the land and their skill and experience as miners. Their discussions began during the month of August, 1939, and during the same period Vanciel instituted negotiations with the appellant bank at its Oakdale branch for a loan of $30,000. On December 18, 1939, a copy of the proposed articles of copartnership between Vanciel, the Kumles and Brier was delivered by Vanciel to the appellant bank. Thereafter on January 2, 1940, after numerous communications between the manager of the Oakdale branch, Mr. T. C. Smethers, and officers at San Francisco branches, as well as personal inspections of the Nevada properties by a mining engineer on behalf of the bank, and discussions with the parties, the bank approved Vanciel's application for a loan of $25,000. On January 10, 1940, the articles of copartnership were executed by all of the parties. On January 29, 1940, the first $5,000 was advanced by the bank, and during the first part of February operations were commenced. Unfortunately difficulties were encountered, and in July of the same year the work was abandoned.

The only issue herein presented by plaintiff pertains to the question as to whether or not the money was loaned to Vanciel as an individual or to Battle Mountain Placers as a copartnership. It is disclosed by the record that prior to the consummation of the loan the plaintiff was well acquainted with the individual members and the activities of the Placer Properties Co. The commercial account of the partnership as well as the accounts of the individual members thereof had been maintained at the Oakdale branch. Also during this period the bank had made a personal loan to one of the members and had made frequent loans to the partnership. According to the branch manager these loans always had been carried in the name of the partnership. Plaintiff likewise was well acquainted with Vanciel, who had been a member of the advisory board of the branch bank at least from 1938 to the date of trial, and who had obtained loans from the bank from time to time since 1926.

The testimony of the Oakdale manager and Vanciel is in sharp conflict with that of the Kumles and Brier upon practically all of the pertinent facts relative to the loan negotia-

tions. However, it is undisputed that the money when loaned to Vanciel was solely upon his individual signature and was carried on the "Loan Liability Ledger" of the bank in the names of Vanciel and his wife. Before any transfer was made of such funds to the partnership account, express instructions to that effect were obtained by the bank from the Vanciels. It is also undisputed that prior to the acceptance by the bank of Vanciel's application for a loan of $25,000 the bank had in its possession a copy of the proposed articles of copartnership, which recited in part that Vanciel was to contribute $25,000 to the partnership as his capital contribution, which contribution would be repaid to him with interest prior to the repayment of the capital contributions of the other partners. The articles contained a further provision which prohibited any partner from incurring indebtedness for the partnership in excess of $5,000 without first obtaining the written consent of all of the parties. It is to be noted that pursuant to a letter from E. J. Wait, vice-president of the bank, the Oakdale branch took an assignment of Vanciel's land owner's royalty under his lease with Placer Properties Co. as security for the loan, which assignment recited in part that it was to be made "for the purpose of securing payment to Bank of America . . . of the sum of $25,000.00 loaned to the above named lessors [Charles F. Vanciel and Velma A. Vanciel] by said bank . . . according to the terms and provisions of a certain promissory note made, executed and delivered by Charles F. Vanciel and Velma A. Vanciel. . . ." Thereafter the Kumles and Brier accepted said assignment and agreed to pay the royalties and rents to the bank. In addition, an assignment of Vanciel's interest in the Battle Mountain Placers likewise was taken by the bank but was subsequently waived for the reason that its attorney was of the opinion that it might thereby become directly involved in the partnership. Although, as stated, the loans were carried by the bank as the personal obligations of Vanciel and his wife when the Battle Mountain Placers were set up by an accountant secured by Vanciel, said loans were entered as a liability of the partnership. The record also discloses, and the court found, that prior to the execution of the note for $27,909.60 by Vanciel he had, from time to time, renewed in his own name some of the notes which were executed prior to the signing of the articles of copartnership.

The final $5,000 was loaned after the partnership had been

in existence for several months. It was borrowed for partnership purposes and was in accordance with the previously quoted provision of the articles of copartnership. The partial payment thereon was made out of partnership funds and therefore presented an entirely different situation from that respecting the original $25,000, and was so recognized by the trial court in its findings.

It is appellant's contention that the partnership was liable directly on the notes, and in support thereof the case of *First National Bank of Dixon* v. *Spangler* (1920), 49 Cal. App. 133 [192 P. 874] is cited as the leading case on this question. That case is easily distinguishable on the facts. There the defendants were partners in a butcher business, and during the course of the partnership certain loans were made to the firm upon notes signed only by N. R. Spangler. The conclusion of this court upon the question so raised was predicated upon section 2429 of the Civil Code, which then provided that every general partner was an agent for the partnership in the transaction of its business and had authority to do whatever was necessary to carry on such business in the ordinary manner, and for this purpose could bind his copartners by an agreement in writing. Since the decision in the Spangler case this state enacted the Uniform Partnership Act which, in Civil Code, section 2403, provides in part:

"(1)  Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority.

"(2)  [*Unusual acts.*]  An act of a partner which is not apparently for carrying on of the business of the partnership in the usual way does not bind the partnership unless authorized by the other partners."

It is readily apparent that the notes in question herein are governed by the provisions of said section 2403 and not by the provisions of section 2429 as they existed at the time of the Spangler case. Said notes were not executed "in the partnership name" but in the individual name of Vanciel, nor were

they executed for the purpose of the partnership business, for at that time there was no partnership business; neither can it be said the money was borrowed for the partnership for the apparent carrying on in "the usual way the business of the partnership" for the reason that at the time the original loan was made the partnership was not "carrying on" any kind of business; and certainly, therefore, the transaction must be considered as an "Unusual act" as defined in said subdivision (2).

Likewise the letters and reports of the bank officials and the assignment by Vanciel of his lease to the bank, as previously mentioned, refute the claim now being made that the notes were obligations of the partnership and all the members thereof.

In addition, the articles of copartnership were not executed until several days after the bank had approved the loan to Vanciel. The articles, however, did provide that the "said co-partnership shall commence as of December 18, 1939," but the Kumles and Brier testified the articles were not executed until January 10th because they did not want to commit themselves until they knew definitely that Vanciel could furnish the money.

Appellant's extensive citations from California Jurisprudence are inapplicable for the reason they are founded upon facts different from those involved in the case under review. Equally inapplicable is the citation of appellant (*Stauffer* v. *Ti Hang Lung & Co.*, 29 Cal.App.2d 121 [84 P.2d 209]) relating to the liability of a partnership by virtue of the fact that the proceeds of the notes were placed in the partnership account. ▮ It is true that in the instant case the funds of the loan were ultimately placed in the partnership account, but "the firm is not liable upon paper executed in the name of a partner merely because the consideration of the note was applied to partnership purposes." (47 C.J., Partnership, § 345, p. 872.) In addition the record discloses, without contradiction, that the money was so deposited only after specific authority to that effect was obtained by the bank from the Vanciels. Nor is the issue raised by appellant relative to the liability of a partnership upon a book account which had been kept entirely in the name of one of the partners, and the citation in support thereof (*Furlow Pressed Brick Co.* v. *Balboa Land & Water Co.* (1921), 186 Cal. 754 [200 P. 625]) of

any value to the issues herein presented, for, as the court therein stated, the only question was the effect of the statute of limitations upon the account. The opinion in that case discloses that no issue was raised concerning the authority of the partner in whose name the account was carried to bind the partnership. The court found that not only did he have such express authority but that the law expressly authorized him to act for and bind the partnership in the operation of its business by an agreement in writing under the provisions of sections 2428 and 2429 of the Civil Code, the same sections as were at issue in the Spangler case, both of which cases arose prior to the enactment of said section 2403.

Appellant also cites Daniel on Negotiable Instruments, sixth edition, volume 1, section 336 at page 457. However, that text is further authority for the conclusion reached herein that "prima facie, it [the note] is to be presumed to be the paper of the individual partner whose name is signed to it and the burden of proof is upon the holder to show affirmatively that the signature was intended for the signature of the firm." This is likewise the rule in this state. (*Kayser* v. *Gorman*, 3 Cal.2d 478 [44 P.2d 1041].) In that case this same appellant made a similar claim, namely, that the endorsement of a note by one Gorman was the act of Gorman, Kayser & Co., a partnership, of which Gorman was a member. The note was endorsed by Gorman to make possible the conversion of a corporation into a copartnership, and at the time of the endorsement the partnership had not yet started to function. There, as here, the trial court found against appellant, and at page 486, the court said:

"In support of the finding of the trial court that the guaranty of Gorman was his individual act, and not the act of the partnership, the respondent relies upon the written instrument signed by Gorman in his individual name. It contains his individual promise, 'I hereby guarantee the payment of the within obligation', and is signed 'A. W. Gorman'. The presumption is that a written instrument deliberately executed expresses the intention of the parties. [Cases.] This presumption should prevail unless the evidence offered to show a contrary contention is clear and convincing. It is for the trial court to determine if this presumption has been overcome (2 Cal.Jur. 933, 934). Evidently the trial court was not of the opinion that this presumption had been overcome by the evidence of the appellant, and as this question was for

the determination of the trial court, its decision must be considered final.'' (See, also, *Meyer* v. *Hegler,* 121 Cal. 682 [54 P. 271].)

 Paraphrasing the quoted portion of the case last cited it is equally evident that the trial court herein was not of the opinion that the evidence introduced by appellant to overcome the presumption that the notes in question were the personal obligation of Vanciel, was clear and convincing, and the determination by that court upon such conflicting questions of fact likewise must be considered as final.

The judgment is affirmed.

Adams, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied August 27, 1945.