[Civ. No. 4519. Fourth Dist. July 6, 1953.]

REFINITE SALES COMPANY (a Corporation), Appellant, v. FRED R. BRIGHT COMPANY (a Copartnership) et al., Respondents.

Joseph A. Kean for Appellant.

Horton & Knox for Respondents.

GRIFFIN, J.—Plaintiff brought this action against defendants Fred R. Bright Company, a copartnership, Mrs. Rose L. Bright, a copartner doing business as Fred R. Bright Company, and Mrs. Rose L. Bright, to recover for the claimed sale of a water conditioning unit delivered by plaintiff and

installed on a ranch individually owned by Mrs. Bright. The complaint alleges generally in one cause of action that on December 16, 1946, an account was stated in the sum of $10,800, between plaintiff and Fred R. Bright Company, a copartnership. A second cause of action sets up a claim in the same amount based on an open book account for goods, wares and merchandise furnished the copartnership on November 30, 1946. The next count sets up a written conditional sales contract between plaintiff and "Fred R. Bright," dated July 11, 1946, wherein Bright agreed to purchase from plaintiff the described unit for $10,800 installed upon the property of Mrs. Bright. Title to the equipment was reserved in plaintiff until all payments were made. It was signed by plaintiff company and "Fred R. Bright, by Mae Hernandez, Sec." Rose L. Bright's liability is predicated upon the claim that she and Fred R. Bright were, at the time, doing business as Fred R. Bright Company, a copartnership.

It is Mrs. Bright's contention that Fred, her son, now deceased, was a general partner and she was a limited partner, and that the business of the company was to grow, harvest, ship, and sell vegetable products; that the purchase of the unit was not a partnership obligation but an individual obligation of Fred; and that there was no evidence to the contrary justifying a judgment against her. The trial court agreed with her in this respect, granted a nonsuit, and a jury empaneled to try the cause was discharged.

A recitation of the facts produced by plaintiff is therefore necessary. Mrs. Bright, who resided in Beverly Hills, inherited from her husband ranch acreage near an irrigation ditch close to the town of El Centro. Her son, Fred, over his mother's apparent objections, decided to build an eight-room home, swimming pool, etc., on the property. He built such a home with an additional room for his mother, but she refused to reside on the property. On August 1, 1945, Fred and his mother entered into a partnership agreement for the purpose of carrying on a general produce business of growing, shipping, and selling cantaloupes, lettuce and carrots. She testified under section 2055 of the Code of Civil Procedure, that she was a "limited" partner and her son was a general partner; that they had "such a limited partnership agreement"; that he was authorized to sign contracts for the partnership in conducting the business only; that she had very little to say about the business but she told him to be very careful and not spend business money for personal

things; that she was not interested in building the house on her property; that she asked her son why he did not build on one of his own farms and he said: "Well, this one will be mine some day, anyway," and he preferred to build on it; that her land was being farmed by the partnership and made her living, and that she wanted it to remain a farm; that she never had anything to do with plaintiff corporation; that she objected, constantly, to her son building on her property; that they first maintained a bank account and both she and Fred were authorized to draw upon it for their business as well as personal expenditures, and that their personal expenditures would thereafter be charged off against them through a drawing account allotted to each partner; that she subsequently learned that checks were being drawn by Fred on the company's account in payment of construction work on the house, but she supposed they were being charged to his personal account on the books of the company; that she later found out that the business was suffering financially and she was advised to require that two signatures be necessary before checks could be drawn on the account; that this was done about October, 1946, about the time the house contract was completed; that she took no part in the partnership until December 26, 1946, when Fred was killed; that there was a shed construction account set up on the company ledger and charged to her personally although the shed was used by the partnership; that a similar account was set up for the house construction and charged to Fred R. Bright personally; and that an account was set up on the books for "entertainment of buyers from New York" and Fred drew on it for that purpose.

The auditor for the company testified that the "Ranch House Construction" account showed entries beginning January 31, 1946, and ending June 30, 1946, and these items were paid by checks drawn on the company; that under Fred R. Bright's drawing account there is nothing indicated in reference to house construction; that such expenditures made prior to December 26, 1946, were, after his death, thrown into a capital account; and that the shed construction was not charged to the partnership.

An agent for plaintiff, who sold the equipment, testified that in May, 1946, in the office of the defendant company, Bright said he required equipment for such a project because of his requirement to entertain buyers from out of town, and that he could write the expense of installation of this equipment off on his income tax, through the company; that Fred

R. Bright desired bids on such a project; that he furnished an estimate; that defendant Mrs. Bright was present on one occasion when she made reference to the fact that she did not think she could drink the water which came out of the irrigation ditch, and he told her it would be equal in purity to the water she was drinking in Beverly Hills; that thereafter the equipment was installed and monthly statements for the amount of the contract price were sent to Fred R. Bright, beginning August 29, 1946, and ending at the time of his death, and that no objections were ever made in reference thereto. The trial court sustained an objection to the offer into evidence of the agreement of purchase between plaintiff and Fred R. Bright, on the theory that no sufficient evidence was shown that it was an obligation of the partnership for which Mrs. Bright was liable, and that no showing was made that Mae Hernandez, who signed it as secretary, was authorized to bind the partnership.

In addition, plaintiff offered and the court received in evidence two letters dated June 4, 1946, and another dated December 16, 1946, written by Mr. Bright on the letterhead of the partnership company, signed personally by him and directed to plaintiff, wherein it is stated in the first one: "Please enter order for material enumerated below." Then follows a description of the materials included in the water conditioning system. It was signed: "Approved: By Fred R. Bright, Purchaser." The second reads: "In regards, of your statement of November 30,. Although *we* know this order August 28, *we* did promise to pay, when equipment is installed and in running condition. If you will check with your man . . . he will tell you the machinery is not in perfect running order, . . ." (Signed) "Fred R. Bright" (Italics ours.)

Appellant now argues that the judgment of nonsuit must be reversed first, because the court erroneously refused to allow the purchase agreement in evidence. The objection to its admission was sustained primarily upon the claim that it was necessary for the agent to have authority in writing to execute a contract which itself has to be in writing, citing sections 2309 and 1624(a) Civil Code. There are certain recognized exceptions to this equal dignity of agent rule. In *Knaugh* v. *Baender,* 84 Cal.App. 142, 148 [257 P. 606], it was held that a deed not signed by the grantor himself is sufficiently executed where it is signed by a person in the grantor's presence, at his request, and with his authorization. See, also, *Kadota Fig Assn.* v. *Case-Swayne Co.,*

73 Cal.App.2d 815, 819-821 [167 P.2d 523], and 17 Corpus Juris Secundum, page 413, section 62-c, where it is said that a party may be bound by an agreement where his signature has been affixed pursuant to due and prior authorization or has been adopted or ratified, or where he is estopped to deny a signature. To the same effect is *Moore* v. *Hoar,* 27 Cal.App. 2d 269, 279 [81 P.2d 226].

■ If there was any question as to the authority of the secretary to sign Fred R. Bright's name to the contract, the letter of December 16, 1946, and the delivery and installation of the equipment thereon might well be deemed sufficient evidence of ratification of the signature and the contract from the date of its inception. At least it was sufficient evidence to present the question to the jury.

It is next argued that there was sufficient evidence that the contract was executed in behalf of the partnership; that the equipment was furnished and used in connection with the business of said partnership; and that it was intended to be a partnership transaction and not a personal transaction of Fred R. Bright. ■ It is the rule that "prima facie" a contract, when signed by an individual, is presumed to be the paper of the individual partner whose name is signed to it, and the burden of proof is upon the holder to show affirmatively that the signature was intended for the signature of the firm. (*Bank of America* v. *Kumle,* 70 Cal.App. 2d 362 [160 P.2d 875].)

■ Under section 15009 of the Corporations Code every partner is an agent of the partnership for the purpose of its business, but an act of a partner which is not apparently for carrying on of the business of the partnership in the usual way does not bind the partnership unless authorized by the other partners. In this connection it is contended that there is no evidence that the furnishing of the water softening system to the home or swimming pool was any part of the partnership business or that Mrs. Bright had any knowledge that it was intended to be such.

■ In determining the issue presented we are bound by the time-honored rule that we must consider only the evidence most favorable to plaintiff's cause of action and indulge in every favorable inference fairly deducible, and every favorable presumption fairly arising therefrom, and give to plaintiff the benefit of every piece of evidence which tends to sustain the averments of his complaint. ■ To justify the submission of any question of fact to the jury there must, of course, be proof of a substantial character that the fact is

as alleged. (*Estate of Luckenbach,* 205 Cal. 292 [270 P. 961]; *Thomas* v. *Seaside Memorial Hospital of Long Beach,* 80 Cal.App.2d 841 [183 P.2d 288].)

█ Considering a general partnership, it has been held that the mere form of the agreement between the partners is immaterial if the transaction be in fact a joint adventure for mutual profit; that the law will not countenance contrivances for giving parties the whole advantage of a partnership without subjecting them to its liabilities. (*Oscar Krenz Copper & Brass Works, Inc.* v. *England,* 109 Cal.App. 747, 751 [293 P. 689]; *San Joaquin Light & Power Corp.* v. *Costaloupes,* 96 Cal.App. 322 [274 P. 84].)

In *Furlow Pressed Brick Co.* v. *Balboa Land & W. Co.,* 186 Cal. 754, 765 [200 P. 625], plaintiff sought to recover against the partnership where an open account was maintained only against one of the individuals. There was no question there raised as to the authority of the one partner to bind the partnership. It was said there that it was clearly proper to show that the indebtedness was a partnership one, and the fact that it was charged on the plaintiff's books to one of the partners was sufficient to constitute a book account within the meaning of the code. It then said:

"It appears from the correspondence between the parties that all the negotiations with reference to the account were carried on by E. J. Louis in his own name and that in all his correspondence he purported to be representing his associates. We thus have a case where one member of a partnership carries on the business in his own name with the consent of his associates and contracts a partnership indebtedness in his own name. █ It is true that the partners are in a sense agents for one another, but they also have power to act for and on behalf of the partnership, and when they act in partnership business the partnership acts. The partnership is regarded for some purposes as an entity." (Citing authority.)

To the same effect is *California Canneries Co.* v. *Scatena,* 117 Cal. 447, 449 [49 P. 462]. Here, the books of the partnership show that the construction of the house and installation of the other equipment was paid for by company checks and charged on the books of the company to "House Construction" account.

█ In *Rishwain* v. *Smith,* 77 Cal.App.2d 524, 534 [175 P.2d 555], it is said that "Property acquired with partnership funds is partnership property, in spite of the fact that it may be bought in the individual names of the partners."

See, also, section 15008, subdivision 2 of the Corporations Code.

In *Westcott* v. *Gilman*, 170 Cal. 562, 568 [150 P. 777, Ann.Cas. 1916E 437], it was held that a partnership, where the rights of third parties are involved, is to be determined by the contract, taken with the conduct and the dealings with the world of those who are parties to it. If that contract, and if those dealings, so far as the world is concerned, measure up to the partnership relation, with the joint liabilities and responsibilities attached thereto, then, so far as third persons are concerned who have had dealings with them, the defendants are partners. In view of the evidence produced on this subject, the written agreement should have been received in evidence for the consideration of the jury.

The question whether a general partnership was shown or whether respondent was liable as such a partner should have been submitted to the jury under proper instructions.

Besides the testimony of respondent, taken under section 2055 of the Code of Civil Procedure, there was no evidence showing that she was a *limited* partner and by virtue thereof was relieved of personal liability.

Section 15501 et seq., Corporations Code, known as the "Uniform Limited Partnership Act" provides generally that a limited partner, as such, shall not be bound by the obligations of the partnership and is not liable to creditors such as is a general partner, unless, in addition to the exercise of the rights and powers as a limited partner, he takes part in the control of the business. It then provides for the filing and recording of the certificate setting forth certain prescribed facts (Corp. Code, § 15502.) Such a limited partnership is not formed until there has been a substantial compliance with these provisions. It is apparent then that if such special partnerships are not formed in substantial compliance with the provisions of the law in respect thereto or such special partner takes part in the control of the business, he may become liable as a general partner. (*Siebold* v. *Berdine*, 61 Cal.App. 158 [214 P. 655] ; *Holzman* v. *de Escamilla*, 86 Cal.App.2d 858 [195 P.2d 833] ; *Stowe* v. *Merrilees*, 6 Cal.App.2d 217 [44 P.2d 368].) There is no sufficient showing here that Mrs. Bright was, in fact or in law, a *limited* partner and that she had complied with the statutory requirements in respect thereto so as to prevent a creditor of the partnership seeking judgment against her for the debts of the partnership. She having been called as a witness

for plaintiff under section 2055 of the Code of Civil Procedure, plaintiff was not bound by her testimony that she was a limited partner. The purpose of calling this witness was to illustrate such facts as the witness might testify to which were favorable to the party calling her, without being bound by any adverse testimony which the witness might give. (*Smellie* v. *Southern Pac. Co.*, 212 Cal. 540 [299 P. 529].) The testimony of a witness called under that section is therefore not conclusive in this respect. Whether she can establish that fact as a matter of defense is not before us. The trial court therefore was not authorized to grant a nonsuit based on her testimony in respect to the claimed limited partnership. (*Dempsey* v. *Star House Movers, Inc.*, 2 Cal.App.2d 720 [38 P.2d 825].)

Whether Mrs. Bright may or may not become liable under the other two causes of action pleaded depends largely on the facts finally established in reference to the third cause of action.

Judgment reversed.

Barnard, P. J., and Mussell, J., concurred.