[Civ. No. 5241. Third Appellate District.—April 16, 1935.]

D. C. STOWE, Appellant, v. F. W. MERRILEES et al., Defendants; GUY HOPKINS et al., Respondents.

Lafayette J. Smallpage for Appellant.

Clifton A. Hix for Respondents.

PAULSEN, J., *pro tem.*—This appeal is taken upon the judgment roll alone. Briefly summarizing the findings, it appears that the defendant Merrilees, for some time prior to the fall of 1932, was mining upon certain property in Calaveras County under a lease from the owners thereof.

On November 15, 1932, he and the other defendants, Adams, Hopkins and Mayer, met in Los Angeles and executed limited partnership certificates pursuant to the provisions of section 2478 of the Civil Code, by the terms of which the four partners agreed to carry on mining activities on said leased premises. On the same day, and in accordance with the terms of the certificates, Merrilees assigned said lease "unto the limited partnership", which immediately commenced work upon said claims. Merrilees thereby became the general partner and sole manager and the other defendants became limited partners. The latter never attempted to exercise control of the operations. On January 3, 1933, the certificates were filed in the clerk's office and in the office of the recorder of Calaveras County, the principal place of business of the partnership. On March 7, 1933, plaintiff began furnishing labor and the service of a dragline outfit to the partnership for use in said mining operations. For this he was not paid and the present action was brought to recover the amount due therefor. Plaintiff was given judgment against Merrilees and Adams, who had defaulted. The judgment further provided that plaintiff take nothing against Hopkins and Mayer, who were awarded their costs of suit. This appeal is taken by plaintiff from that part of the judgment in favor of Hopkins and Mayer.

It is conceded by appellant that the judgment must be affirmed if a valid limited partnership existed at the time the debts were contracted. He contends, however, that when persons who own or have an interest in a mining claim commence work thereon a mining partnership is formed by operation of law and that a limited partnership cannot be created for such purpose. He asserts further that there was not a substantial compliance with the provisions of the code as to the filing and recording of the certificates. The points raised on the appeal appear never to have been decided in this state and the cases cited from other jurisdictions throw little light upon the problem.

Section 2511 of the Civil Code provides that: "A mining partnership exists when two or more persons who own or acquire a mining claim for the purpose of working it and extracting the mineral therefrom actually engage in working the same."

Section 2512 reads: "An express agreement to become partners or to share the profits and losses of mining is not necessary to the formation or existence of a mining partnership. The relation arises from the ownership of shares or interests in the mine and working the same for the purpose of extracting the minerals therefrom."

These sections have existed in their present form since 1872. Section 2479 of the Civil Code was adopted in 1929 as part of the Uniform Limited Partnership Act and states that: "A limited partnership may carry on any business which a partnership without limited partners may carry on except banking and insurance."

■ Appellant argues that there is an irreconcilable conflict between section 2479, *supra,* and the two sections dealing with mining partnerships and that under the familiar rule that the language of general provisions must yield to that of special provisions touching the same subject, sections 2511 and 2512 must govern. But it is also true that if code provisions can be reasonably so construed as to avoid conflict, that construction must be adopted. It is the duty of courts, when reasonably possible, to harmonize the several sections involved so as to give effect to the apparent intention of the legislature. It was undoubtedly the intention of the legislature in adopting the provisions of the Uniform Limited Partnership Act not only to secure uniformity between our partnership laws and those of other states but also to extend to all lines of business, except banking and insurance, the privileges of the act. There is no sound reason in public policy why the owners of mining properties should not be permitted to induce capital to participate in their ventures, with a limited liability as to partnership debts, if the rights of third parties are adequately safeguarded. The same status can be obtained by a corporate form of organization. ■ As mining is not included within the exceptions mentioned in said section 2479, it follows that a limited partnership may be formed for such purpose unless the provisions of the code relating to mining partnerships prevent it. We find no provision therein that forbids it. The owners of mining properties may still form mining partnerships by express agreement or, in the absence of such an agreement, such relationship

may arise by operation of law. But under the plain provisions of section 2479 of the Uniform Limited Partnership Act, such owners may, by compliance with the terms of the act, substitute a limited partnership for a mining partnership, and the provisions of the latter act then determine their status.

It appears from the facts stated above that defendants executed their certificates of limited partnership and commenced work on the property on November 15, 1932, but that the certificates were not filed and recorded until' forty-nine days later. Appellant argues that this was not a substantial compliance with the code. He has cited a number of authorities from other jurisdictions on the question of substantial compliance and others which hold that any failure to comply strictly with the provisions of the statute will defeat the attempt to form a limited partnership. None of these cases was decided under a statute exactly like ours and undoubtedly most of them were influenced by the rule prevailing in such jurisdictions that statutes in derogation of the common law should be strictly construed. This rule is not in effect in this state and the act itself contains a provision that it is to be liberally construed. (Sec. 2504, Civ. Code.) ▆▆▆ The prevailing opinion as to the construction of statutes of this character is that they are· remedial in nature and are to be construed with a view to effecting the purpose of the statute and at the· same time protect the public. (47 C. J. 1278, sec. 1017.) No time is fixed by the act within which such filing and recording must be done and it must therefore be held that a *reasonable* time is allowed. What is a reasonable time must be determined by the circumstances of the particular case.

▆▆▆ Although the certificates were not filed promptly, such failure could not have worked to the detriment of appellant. His business with respondents did not start until the certificates had been on file and of record for sixty-four days. The purpose of requiring such filing and recording is to acquaint third parties with the essential features of the partnership arrangement and it appears that ample notice was given in this case. In the case of *Levy* v. *Lock,* 5 Daly (N. Y.), 46, 47 How. Pr. 394, decided under the statutes of New York before the adoption of the Uni-

form Limited Partnership Act by that state, it was held that where a certificate and an affidavit of contribution were filed twenty-eight days after their execution, the statute was sufficiently complied with and the firm became a limited partnership as to creditors whose debts accrued subsequent to the filing. We think the same rule may be applied here. Respondents complied with all the terms of the act long before appellant transacted any business with them and, as to him, a valid limited partnership had been formed.

The judgment is affirmed.

Thompson, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 16, 1935, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 13, 1935.