ARROW PETROLEUM COMPANY *v.* AMES ET AL.

[No. 18,752. Filed May 15, 1957. Rehearing denied June 25, 1957. Transfer denied November 7, 1957.]

*William R. Hunter, Bowen, Mendenhall & Hunter,* of Winchester, *John T. Hays, Hays & Hays,* of Sullivan, *William M. Evans, Cook, Bose, Buchanan & Evans* and *William P. Evans,* of counsel, all of Indianapolis, for appellant.

*Will W. Reller, Brown, Reller, Mendenhall & Kleinknecht,* of Richmond, and *Wilson & Bales,* of Winchester, for appellees.

KELLEY, P. J.—This is an action by appellant against appellee upon an alleged open account. In its third amended complaint appellant, an Illinois corporation, charged that the appellees, on or about April 10, 1947, formed a partnership for the development of certain oil-well leases in Franklin County, Illinois, and in connection with the drilling, equipping, and operation thereof borrowed and obtained from appellant money, services, and materials in a specified amount, of which the sum of $47,471.97 remained unpaid. A Bill of Particulars of the alleged account was made a part of the complaint.

The only appellees subjected to the jurisdiction of the court were the appellees, Don Teetor, Herman Teetor, and Harry Bockhoff, all residents of Indiana.

Said appellees filed answer under the rules and a separate special answer in two paragraphs. The first paragraph of the special answer alleged, in substance, that appellant had recognized the appellee, Harry G. Ames, as being individually liable for the account sued upon and had accepted the promissory notes of the latter and his wife, secured by their mortgage, in full

payment of the alleged indebtedness; that, by reason thereof, the account has been fully paid.

The second paragraph alleged, in material substance, that appellee, Ames, for a long time prior to the filing of the action had engaged in the production and sale of oil products; that during 1945, 1946 and 1947 appellant "was anxious to secure crude oil" for its oil refinery in Centralia, Illinois, and, prior to April 10, 1947, for the purposes of its business appellant agreed to and did furnish Ames with such money, services and material as necessary for his use in drilling and equipping the oil wells referred to in the complaint and the development of other wells in West Frankfort, Illinois; that appellant charged Ames therefor on its books and thereafter accepted Ames' promissory notes in payment thereof. That thereafter, on April 10, 1947, Ames sold to each of the Teetors a one-sixteenth (1/16) fractional interest in certain oil wells for which they each paid Ames $3,000.00, and that it was agreed that any costs chargeable to them for drilling and equipping the wells was to be paid for out of oil produced from the wells. That on said date Ames sold to appellee Bockhoff a 1/8th interest in 40 acres of land, upon which Ames held oil leases, for $6,000.00, which amount Bockhoff paid, and it was agreed Ames was to drill four wells thereon and the costs for the drilling and equipping thereof was to be paid out of the oil produced therefrom. That appellees have fully paid the purchase price for their respective fractional interests in all the wells described in the complaint and have paid all other obligations arising out of or connected therewith. That appellees made no other agreements with reference to said oil wells and were not liable for any part of the account sued upon.

The cause was submitted to the court, without jury. The court found for said appellees and that appellant take nothing by its complaint. Appellant's brief states

that the court announced its finding in writing and it "concluded that the evidence tends to support the proposition that the notes and mortgages from Ames . . . were accepted by plaintiff appellant in payment of the indebtedness sued on". Judgment for said appellees.

Appellant's motion for a new trial on the grounds of the insufficiency of the evidence to sustain the decision of the court and that the decision was contrary to law, was overruled and this appeal duly followed.

The record tends to show that the appellant was an Illinois oil refining corporation and for the purpose of securing crude oil had previously advanced money to appellee Harry G. Ames, a resident of the State of Illinois who, as stated, was not subject to the jurisdiction of the court below, and had financed him in the development of an oil field in Kentucky, taking notes and mortgages on the oil leases as security for money advanced in drilling and development operations. Later the appellant advanced money to Ames on oil leases in West Frankfort, Illinois, on which a good well, known as the Fitzgerald well, was developed about April 1, 1947.

On April 10, 1947, after Ames had made arrangements with appellant to advance money to him for the drilling of two oil leases in Franklin County, Illinois, known as the "Boner" and "Thompson" leases, the expenses for the development of which constitute the matter at issue in this appeal, Ames visited appellees, Teetors and Bockhoff, in Richmond and Hagerstown, Indiana, and talked to them with reference to the purchase by such appellees of interests in said Boner and Thompson wells. Ames then sold a 1/8th interest of 40 acres to Bockhoff for $6,000.00; a 1/16th working interest to Don Teetor for $3,000.00; and a 1/16th working interest to Herman Teetor for $3,000.00. Said appellees at said time paid said amounts in full. At this time, on April 10, 1947, Ames made a written

agreement with each of said appellees. The agreements were on printed form with ink writing in the blank spaces. They are similar, except for the written in portions, and we, therefore, for the purposes of this opinion, deem it sufficient to set forth a copy of only one of said written agreements.

### ARTICLES OF AGREEMENT TO FORM A LIMITED CO-PARTNERSHIP

Made at *Hagerstown* this *10* day of *April,* A. D. 1947 *Herman Teetor* hereby agrees to join with others in the development of certain leases, grants, mineral rights, etc., acquired in the name of this co-partnership known and described as *the SW-¼ of NW-¼ of sec. 30 Township 7 So. Range 3 E. Drilling Blocks 92, 93, 94, and 73 in the City of West Frankfort, Franklin County, Ill.* and to become a special partner in this co-partnership known as *"AMES MANAGEMENT 26A.*

He further agrees to pay to the general partner hereinafter named in a copy of a general partner's agreement which is attached and made a part of this agreement, *$3,000.00,* as a contribution to the capital funds of this co-partnership.

The above agreements are entered into a consideration of the following covenants:

That he is to receive from the general partner every three months, a full and complete statement of affairs.

That he will have no liability beyond his contribution to the capital funds as above specified.

That he is not subject to any assessments, levies, charges or dues of any kind or nature not provided for in this agreement.

That he is to receive a *1/16 of the working interest in the above described property. Cost of the wells to be paid for out of oil with no interest charges on money for 1 year* of any and all earnings, profits or increment of such co-partnership, and in the event of liquidation his *portion* of all remaining assets belonging to said co-partnership.

That the sum of *$3,000.00* will be contributed to the capital account of said co-partnership.

That one HARRY G. AMES has signed and agreed to act as general partner to direct and man-

age the affairs of this co-partnership as outlined and agreed to in the general partner's agreement, and assumes all liability therefor.

It is further agreed that:

All the business dealings of every kind and nature shall be conducted in the name of this co-partnership, shall be in accordance with and within the scope of duties and agreement by the general partner which have been made a part of this agreement.

IN WITNESS WHEREOF, the undersigned has set his hand and seal on the day and year first above written.

SIGNED AND SEALED in the presence of:

*Elizabeth L. Marsh*   *Herman C. Teetor* (SEAL)
   Witness                          Co-Partner

## ARTICLES OF LIMITED CO-PARTNERSHIP AGREEMENT OF THE GENERAL PARTNER

Made at *Hagerstown, Ind.* this *10* day of *April,* A. D. *1947* By and between Harry G. Ames, the general partner, and certain special partners.

WITNESSETH, that the said parties above named and to be named as special partners, have agreed to become the co-partners in the development of a certain lease known and described as "AMES MANAGEMENT *26A*" and by these presents do become co-partners together.

It is hereby agreed that:

As such general partner, at all times during the continuance of this partnership, that he will give attention to and his best efforts to the utmost of his skill and ability for the joint interest of the partnership.

It is further agreed that:

He will negotiate contracts for drilling, piping and such other things as are necessary, and in the event that oil or gas is produced, then for the sale of said oil and gas to the best advantage of said partnership and for the establishment of a trusteeship or that all monies received for oil and gas produced shall be paid equitably to all interested parties.

And also it is agreed that he will select locations

for such drilling and do all necessary things therefore or thereto.

It is further agreed that:

He will turn over to the trustee all records, papers, deeds, etc., as well as, all monies, including capital contributions which may come into his hands belonging to the co-partnership to the trustee when appointed, and that when approved by the trustees he will sign all necessary contracts, agreements, etc., negotiated by him.

It is further agreed:

That he shall and hereby does contribute to the capital amount the sum of Ten Dollars and that he shall be considered as entitled to .......... of the total distributions made to special partners.

IN WITNESS WHEREOF, the said Harry G. Ames, general partner, has set his hand and seal the day and year above written, it being understood that this agreement is to be attached and made a part of certain special partner agreements and an agreement of trust.

SIGNED AND SEALED in the presence of:

*O. Guinty*, Witness      *Harry G. Ames* (SEAL)
*Whitney C. Norton,* Witness   General Partner

The written agreement with appellee Bockhoff provided "That he is to receive a 1/8 of 40 acres with four wells drilled and to be paid for out of oil." This provision differed from that contained in the Teetors' agreement, which provided for a working interest.

The suit in the instant case is based upon an open account for expenses incurred in the drilling and development of the said Boner and Thompson wells, the former of which proved to be dry and the latter commercially productive.

Prior to the bringing of the action in the instant case, the appellant demanded $6,757.17 from Bockhoff, representing a one-eighth drilling cost of the Boner and Thompson wells, and $3,378.62 from each of the Teetors for an alleged respective one-sixteenth of the cost of

the drilling of said two wells. The appellees, by correspondence, denied liability.

The third amended complaint, in addition to what we have already stated, alleged that the appellees had not renounced their interest in said co-partnership or in other compensation by way of income from said business or the operations of said co-partnership.

The appellees admit that neither the articles of partnership nor any certificate thereof was ever recorded in Indiana or Illinois, so it must be conceded for the purposes of this appeal that the provisions of the statutes as to a limited partnership were not complied with, and that appellees were general partners for the purposes and in accordance with the written articles of partnership executed by them without any limitation of liability, as far as third parties were concerned.

Some contention is made by said appellees that their agreement constituted a mining partnership and that they do not have a partnership liability thereunder, such as they would have under an ordinary commercial agreement. However, it is held that under the law of Illinois there is no distinction between mining and ordinary commercial partners, so far as liability is concerned for partnership debts incurred pursuant to the partnership purposes. *Harris et al.* v. *Young et al.* (1921), 298 Ill. 319, 131 N. E. 670; *Davis* v. *Morris* (1940), 37 Cal. App. 2d 269, 99 P. 2d 345; *Glasmil, Oil & Gas Leases and Royalties,* 2d Ed. 1938, p. 334.

Furthermore, the record does not show that the appellees renounced their interests in such partnership business in accordance with the Uniform Limited Partnership Act of Illinois.

The Uniform Limited Partnership Act of Illinois contains the same language, in respect to said renunciation, as does the Indiana Act. For convenience,

therefore, we refer to Sec. 50-131, Burns' 1951 Replacement.

It seems immaterial, also, that the appellees did not expressly agree to share the losses. They agreed to share the profits and it follows as a legal consequence that they must share the losses, there being nothing said in the agreement as to losses. *Koppa* v. *Yockey* (1921), 76 Ind. App. 218, 222, 131 N. E. 828. If appellees be considered as silent or dormant partners, unknown to appellant, such fact would not release them from liability for indebtedness incurred in the accomplishment of the partnership purposes. *Gilmore* v. *Merritt et al.* (1878), 62 Ind. 525; *Strecker et al.* v. *Conn* (1883), 90 Ind. 469; *Fishel et al.* v. *Pinckard* (1923), 80 Ind. App. 544, 141 N. E. 615; *Hoffman* v. *Stewart* (1913), 184 Ill. App. 66. We think that it can not be seriously questioned, under the facts and circumstances shown by the record, that appellees were general partners with Ames in the development of the oil leases in question.

Having concluded that said appellees, Teetors and Bockhoff, are partners with said Ames and liable for the partnership debts, we come to what appears to be the most important and crucial question in the case. It arises in connection with said appellees' answer of payment and the necessary consideration of the evidence with reference thereto. Said appellees contend that the conclusion of the trial court may be sustained on the theory that there is evidence of probative value that Ames gave to appellant and that the latter accepted promissory notes and mortgages, executed by Ames and his wife, in full payment of the herein sued upon open account indebtedness of said appellees.

The record contains evidence, we think, which tends to clearly show that Ames in giving appellant the notes and mortgages of himself and wife, did so with the in-

tention that the same were in payment of the indebtedness incurred for the drilling, completion, and management operating costs of the wells at West Frankfort, including the Boner and Thompson wells. We make reference to a part of the testimony of Ames:

"Q: And how did you pay Arrow for what they had done for your part?
"A: I signed notes for the amount they had advanced me, and gave them a mortgage on my interest in the property.
. . .

"Q. And did you give these notes to Arrow in payment of the indebtedness for the drilling, completion, and management operating costs of these wells at West Frankfort?
"A: I did."

The transactions relative to the giving and acceptance of said notes and mortgage occurred in the State of Illinois. It is held by the courts of that State that whether or not a note or mortgage has been made and *accepted* in payment of an obligation is a question of fact depending upon the intention of the parties, and such intention must be made manifest in the transaction. *Illinois & Indiana Fair Association* v. *Phillips* (1927), 328 Ill. 368, 159 N. E. 815; *Baker et al.* v. *Salzenstein* (1924), 314 Ill. 226, 145 N. E. 355; *Boulter* v. *Joliet National Bank* (1920), 295 Ill. 594, 129 N. E. 513.

The record evidence most favorable to appellees discloses that beginning in 1945 and continuously since appellant had advanced money, services and materials to Ames in connection with the development of his oil leases and projects in Illinois and other states and regularly accepted notes and mortgages therefor executed by Ames and his wife. In the main the notes and mortgages were liquidated from time to time by the utilization and sale of the crude oil produced from the

wells upon which appellant held its mortgage lien. There appears nothing to indicate that the transaction between Ames and appellant which reference to the Boner and Thompson wells was of any different type or character than that of the previous transactions.

The record further reveals that on December 31, 1947, Ames and his wife executed to appellant a deed of trust securing all of Ames' indebtedness to that date, together with any future indebtedness, not exceeding $250,000.00. Supplemental mortgages or deeds of trust were given appellant by Ames and his wife on April 1, 1948 and July 27, 1948. Included in said indebtedness were the notes given by Ames in connection with the advancements for the Thompson and Boner wells. Appellant used some of these notes as collateral security for money borrowed by it from the First National Bank of Chicago. When the last deed of trust was given on July 27, 1948, the drilling and exploration for oil in the West Frankfort area was practically completed. The mortgages covered Ames' personal property as well as his land and oil wells and any property or interest of his wife.

Appellant's witness, a refinery manager at Appellant's Centralia plant, testified that he learned of Ames' associates, the appellees, the Teetors and Bockhoff, as early as the latter part of March or the first of April, 1947, and referred their names to appellant's Chicago office. There appears no evidence that said appellees were ever requested or solicited by appellant or any of its representatives to join in the execution of any of said Ames notes or to give any kind of note or security in connection with all or any portion of the alleged indebtedness.

Mr. Harold Boedeker, appellant's treasurer and former comptroller, testified concerning the aforementioned notes and mortgages of said Ames and identified them as to their respective amounts and purpose. We

advert to a portion of his testimony which seems to be the only direct evidence shedding any light on the question of acceptance now under consideration:

"Q: For the help of the Court, have you in pencil designated the various things that the note refers to, that the note evidences?

"A: Yes.

"Q. So it would simplify it for the Court, would it not?

"A. Yes. $2,514.33 note signed by Harry G. Ames covering Mr. Bockhoff's share of the Boner lease. . . . Another note same date amount $4,211.34, signed by Harry G. Ames representing Mr. Bockhoff's interest in the Thompson lease. Note, same date, amount $1,257.17 signed by Harry G. Ames, representing Herman Teetor's interest, Boner lease. . . . Same date on this note for $2,105.68, signed by Harry G. Ames and representing Don Teetor's interest, Thompson lease. . . . Same date, amount $1,257.17, signed by Harry G. Ames, representing Don Teetor's interest, Boner lease. . . . Same date, $2,105.68, signed by Harry G. Ames, representing Herman Teetor's interest, Thompson lease. . . . Now these notes as far as they were prepared cover the charges through December 30, 1947. . . .

"Q: Did you ask Ames to get notes from these various men? (Referring, among others, to appellees Bockhoff and Teetors).

"A: Yes. . . .

"Q: What did Ames say?

"A: He told me he couldn't get the notes signed."

There were other notes identified in the same fashion but it would serve no useful purpose to here set them out in detail.

Appellee acknowledges the holding of the Illinois courts above referred to but insists that the notes and mortgages were a higher form of security than appel-

lant had before and that there was sufficient evidence from which the court could infer the intention of appellant to accept the notes and mortgages in payment of the open account herein sued upon. The giving of the notes and mortgages by appellee to appellant unquestionably furnished the latter with a higher form of security with relation to Ames' indebtedness but there appears nothing to indicate that the notes and mortgages were intended to constitute a higher form of security insofar as the partnership obligation was concerned.

It is true, as appellees state, that we cannot weigh the evidence. But we are required to review the evidence, as we have many times, to determine if there is any evidence or reasonable inference therefrom to support the challenged holding of the trial court. Our efforts have rewarded us with the observation of no direct evidence nor any reasonable inference upon which the court could predicate a finding that an intention by appellant to accept Ames' notes and mortgages in payment of the partnership account was made "manifest" in the transaction, as required by the holding of the Illinois Supreme Court. *Illinois-Indiana Fair Ass'n* v. *Phillips, supra,* points 6-8.

The judgment is reversed and cause remanded with instructions to sustain appellant's motion for a new trial.

NOTE.—Reported in 142 N. E. 2d 479.
Transfer denied, Arterburn, C. J., in which Emmert, J. dissents.