[No. 2412-3.   Division Three.   November 22, 1978.]

DWINELL'S CENTRAL NEON, *Respondent,* v. COSMOPOLITAN CHINOOK HOTEL, ET AL, *Appellants.*

---

*Robert K. Powers* and *Robert E. Kovacevich,* for appellants.

*Nashem, Prediletto, Schussler & Halpin* and *Don W. Schussler,* for respondent.

McInturff, J.—Cosmopolitan Chinook Hotel (Cosmopolitan) appeals from a summary judgment, holding it liable as a general partnership—and not as a limited partnership—in connection with an action brought by Dwinell's Central Neon (Dwinell's) for breach of contract.

On October 25, 1972, Cosmopolitan and Dwinell's entered into three separate agreements for the lease–sale of neon signs. Dwinell's was represented by one of its salesmen and Cosmopolitan was represented by two of its partners. The contracts contained an acceleration clause in the event of Cosmopolitan's default and a provision for a reduction in the monthly payment should Dwinell's fail to properly maintain the signs.

In October 1976, Cosmopolitan was behind on its payments and Dwinell's brought suit to accelerate the balance due under the contract. The complaint averred that Cosmopolitan was a general partnership due to its failure to comply with the statutory filing requirements of the limited partnership act. Cosmopolitan, on the other hand, claimed limited partnership status and stated that their status was known by Dwinell's at the time of contracting and was a matter of common knowledge in the community.

We are asked to consider whether summary judgment was proper in light of the following alleged factual issues left unresolved:

(1) Whether Dwinell's had actual knowledge of Cosmopolitan's limited partnership status at the time of contracting;

(2) Whether the court erred in concluding that Cosmopolitan was a general partnership;

(3) Whether Cosmopolitan is entitled to a discount under the contract, reducing the amount of the lease payments, · because the neon signs were not in operation;

(4) Whether the court improperly shifted the burden of proof to Cosmopolitan when Dwinell's· was the moving party for summary judgment.

At the time Dwinell's and Cosmopolitan entered into the lease–sale agreements, Cosmopolitan had taken no steps to

comply with the filing requirements of RCW 25.08.020.[1] It was not until February 1973, several months following execution of the contract with Dwinell's, that the certificate of limited partnership was filed. Cosmopolitan argues, however, that it was widely known in Yakima that a limited partnership had purchased the Chinook Hotel. Further, Cosmopolitan states that this fact was communicated to Dwinell's via its salesman. This information was allegedly

---

[1] RCW 25.08.020:

"Two or more persons desiring to form a limited partnership shall:

"(1) Sign and acknowledge a certificate, which shall state:

"(a) The name of the partnership;

"(b) The character of the business;

"(c) The location of the principal place of business;

"(d) The name and place of residence of each member; general and limited partners being respectively designated;

"(e) The term for which the partnership is to exist;

"(f) The amount of cash and a description of and the agreed value of the other property contributed by each limited partner;

"(g) The additional contributions, if any, agreed to be made by each limited partner and the times at which or events on the happening of which they shall be made;

"(h) The time, if agreed upon, when the contribution of each limited partner is to be returned;

"(i) The share of the profits or the other compensation by way of income which each limited partner shall receive by reason of his contribution;

"(j) The right, if given, of a limited partner to substitute an assignee as contributor in his place and the terms and conditions of the substitution;

"(k) The right, if given, of the partners to admit additional limited partners;

"(l) The right, if given, of one or more of the limited partners to priority over other limited partners, as to contributions or as to compensation by way of income, and the nature of such priority;

"(m) The right, if given, of the remaining general partner or partners to continue the business on the death, retirement or insanity of a general partner; and

"(n) The right, if given, of a limited partner to demand and receive property other than cash in return for his contribution; and

"(o) The right, if given, of a limited partner to vote upon any of the matters described in RCW 25.08.070, as now or hereafter amended, and the vote required for election or removal of general partners, or to cause other action to be effective as to the limited partnership.

"(2) File for record the certificate in the office of the county clerk of the county of the principal place of business.

"A limited partnership is formed if there has been substantial compliance in good faith with the foregoing requirements."

communicated in the following manner—the word "partnership" was circled as identifying the "user" under the contract and the contract was signed, "Evan Bargman, V.P., R. Powers, President." According to Cosmopolitan, circling the word "partnership" best indicated its status as a limited partnership and the signatures clearly indicated that Bargman and Powers were not signing as general partners but as corporate officers of the general partnership.

■ Basic rules have evolved in the area of summary judgment.

(1) The object and function of the summary judgment procedure is to avoid a useless trial; however, a trial is not useless, but is absolutely necessary where there is a genuine issue as to any material fact. . . .

(2) Summary judgments shall be granted only if the pleadings, affidavits, depositions or admissions on file show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. . . .

(3) A material fact is one upon which the outcome of the litigation depends.

(Citations omitted.) *Balise v. Underwood,* 62 Wn.2d 195, 199, 381 P.2d 966 (1963).

■ An affidavit containing bare allegations of fact without any supporting evidence is insufficient to raise a genuine issue of fact for purposes of a motion for summary judgment. The function of summary judgment is to permit the court to pierce the formal allegations of fact in pleadings when it appears that there are no genuine issues of fact. *Meissner v. Simpson Timber Co.,* 69 Wn.2d 949, 955, 421 P.2d 674 (1966).

The bare allegation in Cosmopolitan's affidavit—"it was widely known and publicized in Yakima that it [the hotel] had been purchased by a limited partnership."—is insufficient to raise a genuine issue of fact. It must furnish the factual evidence upon which it relies. *Lundgren v. Kieren,* 64 Wn.2d 672, 677, 393 P.2d 625 (1964). Here, there is no

factual evidence to support the allegation. *Meissner v. Simpson Timber Co., supra.*[2]

Secondly, a third party's knowledge regarding the status of a limited partnership is irrelevant when at the time of contracting, the partners have made no attempt to comply with the statutory information and filing requirements of the limited partnership act, RCW 25.08.020(1).[3]

█ Limited partnerships were unknown at common law and are purely creatures of statute. Parties seeking the protection of limited liability within the context of a partnership must follow the statutory requirements. *See Frigidaire Sales Corp. v. Union Properties, Inc.,* 88 Wn.2d 400, 402, 562 P.2d 244 (1977). To form a limited partnership, a certificate of limited partnership must be drafted and filed with the county clerk pursuant to RCW 25.08.020(1)(a)–(o), (2). While our courts no longer require literal compliance with the statute at one's peril, *Rathke v. Griffith,* 36 Wn.2d 394, 400–04, 218 P.2d 757 (1950), the statute does contemplate at least "substantial compliance . . . with the . . . requirements." RCW 25.08.020(2). Here, there was no compliance with the statute at the time of contracting and the certificate of limited partnership was not filed until several months later. The object of statutory regulation of limited partnerships is to insure that limited partners do not find themselves exposed to the unlimited liability of a general partner.[4]

---

[2]The colloquy between court and counsel will demonstrate this point:

"THE COURT: My question is do you personally now, can you assure the Court at this moment that somebody can come in in a sworn affidavit under oath and say I specifically told the salesman that this was a limited partnership?

"MR. ALGEO: No, I wouldn't make that representation . . . I have talked to Mr. Powers, Sr. and . . . I can't actually make a specific statement to the Court that he ever told me that Dwinell's salesman was informed of this."

[3]Cosmopolitan does not argue the theory of limited partnership by estoppel, thus we need not consider it on appeal.

[4]*Franklin v. Rigg,* 143 Ga. App. 60, 237 S.E.2d 526, 528 (1977); *Hoefer v. Hall,* 75 N.M. 751, 411 P.2d 230, 232 (1966).

The statute specifies the acts which must be performed by persons desiring to become limited partners. Cosmopolitan had not complied with any requirements of the statute at the time it entered into the contract with Dwinell's. Obviously, the purpose of the filing requirement was thwarted, that is, to acquaint third persons dealing with the partnership of the details of the partnership arrangement.[5] A creditor has a right to rely upon there being substantial compliance with RCW 25.08.020 before the protection of its provisions is afforded to any member of a partnership. *Tiburon Nat'l Bank v. Wagner,* 265 Cal. App. 2d 868, 71 Cal. Rptr. 832, 837 (1968). Here there was no compliance.

Cosmopolitan, relying on the case of *Stowe v. Merrilees,* 6 Cal. App. 2d 217, 44 P.2d 368 (1935), contends that because RCW 25.08.020 is silent as to when the certificate must be filed, a reasonable time is implied. Cosmopolitan submits that it substantially complied with the requirements of the statute by filing a certificate of limited partnership some 90 days *after* the contract went into effect. Reliance on *Stowe v. Merrilees* is misplaced. There, the partners executed a partnership agreement but failed to file the certificate until 49 days later. The court held that the firm became a limited partnership as to third parties who extended credit *subsequent* to the act of filing. Cosmopolitan wants the effect of filing the certificate of limited partnership to relate back to a contract previously entered into. To adopt this reasoning would render the statutory requirement of RCW 25.08.020 meaningless and business relationships would be rendered unstable and unpredictable.

Thus, since there was no compliance with the limited partnership act, the court was correct in holding as a matter of law that Cosmopolitan was liable as a general part-

---

[5]*Hoefer v. Hall,* 75 N.M. 751, 411 P.2d 230, 233; *Stowe v. Merrilees,* 6 Cal. App. 2d 217, 44 P.2d 368, 370 (1935).

nership on the contract with Dwinell's.[6]

We are next asked to consider whether the court erred in failing to find an unresolved factual dispute relating to the offset provisions in the contract. Under the contract, Dwinell's agreed to maintain and repair the neon signs within 36 hours' receipt of written notice. Nothing in the record indicates that the required written notice was given.

■ Cosmopolitan states that the contractual requirement of written notice was modified by course of dealing and that the telephone was employed and accepted as a means of giving notice. This contention did not come to the court's attention until May 7, 1977, the time set for presentation of the summary judgment order, which was merely a reiteration of the oral opinion the trial court made after hearing the motion for summary judgment on April 15, 1977. At that time, another lawyer for the defendants was before the court and made an offer of proof stating what the damages would be because of the failure to repair the signs. This offer of proof was made after the summary judgment had been signed, with the consent of the court, but outside the court's presence. Even if the offer of proof is considered, it fails to raise a material issue of fact. The offer of proof states that Dwinell's did not service the signs after October 1, 1975. However, by that time the defendants were delinquent in their payments under the contracts in the amount of several thousand dollars. With respect to Dwinell's contractual duty to continue servicing the signs following Cosmopolitan's breach by nonpayment, we agree with what was said in *Jacks v. Blazer*, 39 Wn.2d 277, 285, 235 P.2d 187 (1951):

---

[6]Our decision requiring substantial compliance with the limited partnership act is supported by the following decisions from other jurisdictions: *Filese v. United States*, 352 F.2d 339, 341 (4th Cir. 1965); *Bisno v. Hyde*, 290 F.2d 560, 561 (9th Cir. 1961); *Ruth v. Crane*, 392 F. Supp. 724, 733 (E.D. Pa. 1975); *Lowe v. Arizona Power & Light Co.*, 5 Ariz. App. 385, 427 P.2d 366, 368 (1967); *Solomont v. Polk Dev. Co.*, 245 Cal. App. 2d 488, 54 Cal. Rptr. 22, 27 (1966); *Refinite Sales Co., v. Fred R. Bright Co.*, 119 Cal. App. 2d 56, 258 P.2d 1116, 1121 (1963); *Leventhal v. Atlantic Rainbow Painting Co.*, 68 N.J. Super. 406, 172 A.2d 710, 714 (1961); *Arrow Petroleum Co. v. Ames*, 128 Ind. App. 10, 142 N.E.2d 479, 483 (1957).

"A breach or non–performance of a promise by one party to a bilateral contract, so material as to justify a refusal of the other party to perform a contractual duty, discharges that duty."

Dwinell's duty to service the signs was discharged by Cosmopolitan's material breach of the contract.

■ Nor do we believe that the court improperly shifted the burden of proof to Cosmopolitan. There is no dispute that the statutory requirements to establish a limited partnership were not complied with, nor was written notice given so as to trigger the liquidated damage provision. Cosmopolitan attempted to impute knowledge on the part of Dwinell's regarding limited partnership status without offering any factual evidence to support this assertion. Furthermore, the assertion was irrelevant insofar as establishing limited liability.

A nonmoving party attempting to preclude summary judgment may not rely upon argumentative assertions or on having its affidavits considered at their face value, for upon the submission by the moving party of adequate affidavits, the nonmoving party must set forth specific facts that sufficiently rebut the moving party's contentions and disclose that a genuine issue of material fact exists.

*Island Air, Inc. v. LaBar,* 18 Wn. App. 129, 136, 566 P.2d 972 (1977).

The judgment of the Superior Court is affirmed.

MUNSON, C.J., and GREEN, J., concur.

Reconsideration denied March 5, 1979.

Review denied by Supreme Court May 25, 1979.