S. FRANKLIN BURFORD and FERN J. BURFORD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Burford v. Commissioner
Docket No. 12466-80.
United States Tax Court
T.C. Memo 1984-466; 1984 Tax Ct. Memo LEXIS 202; 48 T.C.M. (CCH) 1001; T.C.M. (RIA) 84466; September 4, 1984. Michael E. Caryl,Arnold K. Mytelka,Alan Rubin,Gerald H. Litwin and *204 Jeffry M. Schwartz, for petitioner S. Franklin Burford. Bertram L. Potemken, for petitioner Fern J. Burford. Cynthia J. Mattson and Ronald D. Pinsky, for the respondent. SCOTT MEMORANDUM OPINION SCOTT, Judge: This case is before the Court on respondent's motion for partial summary judgment, filed December 16, 1983, pursuant to Rule 121. [1] The record shows that respondent determined a deficiency in petitioners' Federal income tax for the calendar year 1976 in the amount of $328,702.56. One of numerous adjustments in the notice of deficiency was the disallowance of $470,442 of a loss claimed by petitioner with respect to his interest in a limited partnership, Marietta Mines, Ltd. The adjustment resulted from the disallowance of a deduction of $3 million claimed by Marietta Mines, Ltd., for payment of an advanced mineral royalty on its partnership return of income tax for the calendar year 1976. A Form 4625, Computation of Minimum Tax, is attached to the notice of deficiency showing a minimum tax due by petitioners of $243,418.42 based on a capital gains *205 deduction claimed on petitioners' 1976 Federal income tax return of $2,062,852.57. In explanation of his computation, respondent stated that petitioners had discussed with employees of respondent the abatement of the assessment of the minimum tax imposed on items of tax preference, and that petitioners' request for abatement had been given careful consideration, but it had been determined that no abatement or reduction in the total tax liability was appropriate. Respondent further explained that section 56[2] imposed a minimum tax on items of tax preference and that the minimum tax due by petitioners as computed by respondent was $243,402.67. Respondent, in his motion for summary judgment, states that the issues to be decided are (1) whether petitioners may deduct their distributive share of a partnership loss to the extent that such loss resulted from the deduction in 1976 by the partnership of an advanced mineral royalty in excess of the amount applicable to the actual production and sale of minerals, and (2) whether the *206 minimum tax imposed by section 56 on an item of tax preference is constitutional. In his motion for partial summary judgment, respondent alleged that both of the above stated issues could be determined as a matter of law on uncontroverted facts. Petitioners initially took the position with respect to the claimed deduction by the partnership of an advanced mineral royalty that there were genuine issues of fact material to the determination of the issue and, with respect to the minimum tax, that the Court did not have any issue concerning the minimum tax properly before it. In a later filed brief, petitioners took the position that there were uncontroverted facts in the record in this case sufficient to support a summary determination in petitioners' favor on both issues involved in respondent's motion and requested the Court to make a summary determination in petitioners' favor. Respondent states that the uncontroverted facts in this case show that a partnership, Marietta Mines, Ltd., was formed on December 28, 1976, and on December 31, 1976, this partnership entered into a lease with Minerals Management, Ltd., 1976, under which it was granted rights to mine certain properties *207 to which the lessor held mineral leases. The lease provided that the lessee should pay to the lessor an advanced production royalty of $3 million by delivery of a promissory note payable in 300 equal monthly installments of $10,000 each beginning in January 1977. On December 31, 1976, Marietta Mines, Ltd. (the partnership), gave to the lessor a nonrecourse note for $3 million in discharge of its stated obligation under the lease for payment of an advanced royalty. No minerals were mined or sold in 1976 by the partnership and there was no lease or binding obligation entered into by the partnership prior to October 29, 1976. It is respondent's position that under the facts in this case which he contends are uncontroverted and pursuant to our decisions in Gauntt v. Commissioner,82 T.C. 96 (1984); Wing v. Commissioner,81 T.C. 17 (1983); Wendland v. Commissioner,79 T.C. 355 (1982), affd. sub nom. Redhouse v. Commissioner,728 F.2d 1249 (9th Cir. 1984), upholding the retroactive effect of a amendment by *208 T.D. 7523, 1978-1 C.B. 192, to section 1.612-3(b)(3), Income Tax Regs., he is entitled to a partial summary judgment with respect to his disallowance of the portion of petitioners' claimed loss from Marietta Mines, Ltd., applicable to the deduction claimed by that partnership of the $3 million advanced royalty. Section 1.612-3(b)(3), Income Tax Regs., was amended by T.D. 7523, supra, to provide that an advanced royalty paid or accrued in connection with mineral property is deductible by the payor from gross income for the year the mineral product in respect of which the advanced royalty was paid or accrued is sold. T.D. 7523 provides that the modification made thereby in the treatment of advanced royalties paid or accrued in connection with mineral properties is effective with respect to such advanced royalties paid or accrued after October 29, 1976, the date of a news release, IR-1687, announcing the proposed amendment to the regulation. This regulation further provided that the amendment would not apply if prior to October 29, 1976, the payment of the advanced royalty was required pursuant to a mineral lease which was binding upon the *209 party paying or accruing such royalty, or if the payment of the advanced royalty was required by reason of a written contract which bound the party paying or accruing such royalty to execute a lease requiring the payment of the advanced royalty. The regulation further provides that it is incumbent upon the party claiming an advanced royalty deduction to establish that under all of the facts and circumstances the contractual obligation to pay the advanced royalty was binding upon him prior to October 29, 1976, and that a contract will in no event be considered binding upon a party if the obligations imposed on the party prior to October 29, 1976, were not substantial or were illusory. Petitioner, in response to respondent's motion for summary judgment, filed several affidavits with numerous exhibits. The following is a brief summary of the pertinent facts set forth in the affidavits and exhibits attached thereto. P. J. Cutting and William R. Townsend, sometime prior to September 30, 1976, began negotiating with Minerals Management, Ltd., 1976 (MML 1976), for a mining lease on certain property under lease to MML 1976 on which gold and silver mining had previously been conducted. *210 By a document entitled "Lease of Mining Property," dated September 30, 1976, MML 1976, a Nevada limited partnership, as the lessor, granted to Mr. Cutting, as lessee, rights to mine certain mineral properties. The document was a printed form executed by someone on behalf of MML 1976 and by Mr. Cutting. The spaces for amounts of royalties to be paid and other information were not filled in on the document. However, a further agreement, also dated September 30, 1976, was entered into between MML 1976, as lessor, and "P. J. Cutting and Partners," as lessees, which in addition to the printed material contained therein had a provision typed on it for payment of royalties by the lessee to the lessor with respect to certain mining properties specified in the lease. The typed statement provided that on December 20, 1976, lessee should pay to lessor an advanced production royalty of $3,725,000 by delivery of $125,000 in cash and a promissory note in the amount of $3,600,000 payable in 240 equal monthly installments beginning on the 20th day of January 1977. After September 30, 1976, there were conversations between Mr. Cutting and a representative of MML 1976 with respect to various aspects *211 of the lease agreement. Written notes were made of these conversations and at least by October 21, 1976, there was a firm agreement with respect to the obligations of the parties under the lease dated September 30, 1976. By October 21, 1979, Mr. Cutting had agreed to form a corporation, Marietta Mines, Inc., which would be owned totally by him. Mr. Cutting and the corporation were to be the general partners of a limited partnership which would have the rights and carry out the obligations that the oral general partnership, consisting of Mr. Cutting, his corporation to be formed and Mr. Townsend, had under the mining lease. On November 29, 1976, an agreement was entered into between MML 1976, as lessor, and Marietta Mines, Ltd., a New Jersey Limited partnership, as lessee. This agreement recites that the lessor is the holder of certain patented and/or unpatented mining claims therein described and that the lessor and Mr. Cutting, on September 30, 1976, entered into a contract to lease covering the above described properties stipulating that the lessee would pay a minimum rental and a production royalty, and that they entered into further oral understandings expressly stating that *212 the lessor would receive a prepaid production royalty of $3,625,000 which was to be paid by a nonrecourse promissory note. This agreement further recited that the contract to lease dated September 30, 1976, and the applemental provisions thereto were premised upon the understanding that Mr. Cutting and a corporation controlled by him would become general partners of a limited partnership to be formed for the purpose of developing the leased properties and that the limited partnership would assume the benefits and obligations of the lease entered into between MML 1976 and Mr. Cutting. This document also referred to Mr. Townsend as participating in the negotiations as a representative of Mr. Cutting. Petitioners argue that based on the evidence they have produced, the partnership which ultimately became the limited partnership of Marietta Mines, Ltd., actually existed prior to October 29, 1976, because of agreements between Mr. Cutting, Mr. Townsend and Mr. Cutting's corporation to carry on a mining business through a limited partnership to be formed by Mr. Cutting. Petitioners state that the variations in the lease as finally signed by the limited partnership on December 31, 1976, and *213 the lease negotiated on behalf of the partnership by Mr. Cutting and Mr. Townsend were made pursuant to engotiations. The change in the amount of advanced royalty to be paid was in consideration for a change in the obligation assumed by the partnership. Petitioners argue that under the facts shown by the affidavits and exhibits, Marietta Mines, Ltd., was bound prior to October 29, 1976, to pay the $3 million advanced royalty that was paid on December 31, 1976, and therefore summary judgment should be entered in their favor. Petitioners argue that under the uncontroverted facts established in the record the partnership is entitled to the $3 million deduction for payment of an advanced royalty which it claimed for the year 1976. Petitioners state that although Mr. Burford (petitioner) was not a member of the partnership prior to October 29, 1976, under our holding in Elkins v. Commissioner,81 T.C. 669 (1983), he is entitled to deduct his pro rata share of the partnership loss resulting from the partnership's deduction of the advanced royalty. Respondent argues that the affidavits and exhibits submitted by petitioners do not establish an obligation or Marietta Mines, *214 Ltd., to pay any advanced royalty prior to October 29, 1976, because that partnership was formed after October 29, 1976. Respondent also argues that although some of the same properties are involved, the properties covered by the lease dated December 31, 1976, differ materially from those covered by the lease signed on September 30, 1976. Respondent contends that any obligation of Marietta Mines, Ltd., to pay an advanced royalty is illusory. Respondent relies on Gauntt v. Commissioner,supra, to support this conclusion. Respondent states that a limited partnership cannot be formed unless a partnership agreement is filed. Respondent concludes that the limited partnership, Marietta Mines, Ltd., could not have been obligated prior to October 29, 1976, to pay any advanced royalty because no partnership agreement forming the limited partnership was filed in either New Jersey, where the limited partnership was ultimately formed, or Nevada, where any transactions that occurred prior to October 29, 1976, took place. Petitioners argue that under the Uniform Partnership Act, which has been adopted by New Jersey, a partnership may be formed by an oral agreement of *215 two or more persons to carry on a business operation if their intent is to form a partnership. Petitioners argue that pursuant to New Jersey law a limited partnership may succeed to the rights and obligations of a general partnership that was formed orally at an earlier time if the partners in the general partnership intended to form a limited partnership. Respondent argues that the affidavits and exhibits filed by petitioners do not establish that the limited partnership, Marietta Mines, Ltd., had an obligation prior to October 29, 1976, to pay any advanced royalty. However, in his brief respondent contests the correctness of some of the facts which petitioners claim are established by the record. The Uniform Partnership Act, which has been adopted by both New Jersey and Nevada, defined a partnership as "an association of two or more persons to carry on as co-owners a business for profit." New Jersey Stat. Ann. sec. 42:1-6(1)(1940); Nevada Rev. Stat. sec. 87.060 (1979). It is clear from this provision, as well as numerous cases interpreting the Uniform Partnership Act, that a general partnership may be formed by an oral agreement *216 or understanding. See Matter of September, 1975 Special Grand Jury,435 F.Supp. 538 (N.D. Ind. 1977); Ruth v. Crane,362 F.Supp. 724 (E.D. Pa. 1975), affd. without published opinion 564 F.2d 90 (3d Cir. 1977). Rule 121(a) provides that a party may move for summary judgment on all or any part of the legal issues in controversy. Rule 121(b) provides that a decision shall be rendered if the pleadings, answers to interrogatories, depositions, admissions and other acceptable material show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law. The burden to show that there is no genuine issue of material fact is on the moving party. Espinoza v. Commissioner,78 T.C. 412, 416 (1982). In this case a genuine issue of material fact exists unless respondent is correct in his contention that as a matter of law the limited partnership, Marietta Mines, Ltd., is a different "party" from the general partnership that agreed to lease property from MML 1976. The factual issue is whether a general partnership existed prior to the formation of the limited partnership, Marietta *217 Mines, Ltd., and if so, whether the relationship between the two partnerships caused the partnership, Marietta Mines, Ltd., to be obligated prior to October 29, 1976, to pay an advanced royalty to MML 1976. As pointed out in Bisno v. Hyde,290 F.2d 560, 561 (9th Cir. 1961), "there is a paucity of partnership law decisions handed down by the Nevada Supreme Court." [3] However, the Uniform Partnership Act as adopted in Nevada is similar to that adopted in most of the other States. The law as interpreted in numerous States which have adopted the Uniform Partnership Act is that the purpose of recording a certificate of limited partnership is to acquaint third persons with the status of the partnership. Even though the statute requiring the filing of a certificate must be complied with in order to establish a limited partnership, the failure to so comply does not necessarily preclude a partnership from *218 being formed; such failure may render the association a general partnership. Peerless Mills, Inc. v. American Tel. & Tel. Co.,527 F.2d 445, 449 (2d Cir. 1975); Ruth v. Crane,supra at 733; Dwinell's Central Neon V. CosmopolitanChinook,21 Wash. App. 929, 587 P.2d 191, 194-195 (1978). However, whether a partnership exists is a matter of fact which depends on the intention of the parties. Allen v. Amber Manor Apartments Partnership,95 Ill. App. 3d 541, 420 N.E.2d 440, 446 (1981); Klein v. Weiss,284 Md. 36, 395 A.2d 126, 135 (1978). We conclude that whether a partnership which became Marietta Mines, Ltd., was formed prior to October 29, 1976, and whether the partnership that was formed was obligated prior to that date to pay an advanced mineral royalty are questions of fact which must be resolved from evidence received at trial. Since respondent has failed to show that there is no genuine issue of material fact in this case with respect to the deductibility by Marietta Mines, Ltd., of the advanced royalty, his motion for partial summary judgment with respect to the disallowance of petitioners' *219 claimed pro rata share of the 1976 loss of Marietta Mines, Ltd., occasioned by the deduction by that partnership of a $3 million advanced royalty will be denied. Since petitioners have likewise failed to show that no genuine issue of material fact exists with respect to this claimed loss by petitioners, their request for a summary determination in their favor is denied. There is no factual dispute between the partners with respect to the issue of the minimum tax imposed by section 56. The undisputed facts show that in the taxable year 1976, petitioners had a long-term capital gain of $4,125,705.14 from the sale of mining stock. In computing their income tax for the calendar year 1976, petitioners, in accordance with the provisions of section 1202, reduced the $4,125.705.14 long-term capital gain by 50 percent thereof ($2,062,852.57) in determining their income subject to tax. On the face of their return petitioners showed adjusted gross income, including a capital gain of $2,062,852.57, of $1,340,801.77, tax of $640,428.33, credits against this tax of $115,665.22, and a balance of tax of $524,553.01. Petitioners attached to their return a Form 4625, Computation of Minimum Tax, *220 which, except for a minor item not here in issue, showed the tax preference items as capital gains of $2,062,852.57 and a minimum tax of $270,289.53. On line 56 of their return petitioners placed a checkmark in the box indicating that there was attached to the return a Form 4625 showing a minimum tax of $270,289.53. However, on line 21, entitled "Other taxes (from line 62)," no amount was shown; on line 22 total taxes were shown as $524,553.01. From this amount was subtracted total taxes withheld and paid as estimated taxes of $263,223.85, leaving, as shown by the return, a balance of tax due of $261,329.16. Under date of April 15, 1977, respondent assessed on the basis of "return filed" $794,842.12 of taxes against petitioners for the year 1976. This assessment was composed of the $524,553.01 reported by petitioners as tax due on their return plus the $270,289.53 shown on the Form 4625 attached to their return as the minimum tax. In the notice of deficiency for the calendar year 1976 dated April 14, 1980, respondent determined a deficiency of $328,702.56 in petitioners' income tax. In arriving at the deficiency determined, the tax reported to be subtracted from the tax liability *221 as determined by respondent was shown as $794,842.12. After making the assessment as of April 15, 1977, of the $794,842.12 as tax shown on the return, respondent commenced collection of a deficiency in payment by crediting refunds otherwise due to petitioners against the amount he showed as the unpaid balance of the tax returned. The petition in this case was filed on July 9, 1980. This petition contained no assignment of error with respect to the portion of the notice of deficiency that dealt with the determination of the amount of minimum tax due by petitioners which, as heretofore stated, was shown in the notice of deficiency to be $243,418.42, nor were any facts alleged with respect to this determination. On September 30, 1982, S. Franklin Burford (petitioner) filed, as plaintiff, an action in the United States District Court for the Southern District of West Virginia against the District Director of Internal Revenue and the United States of America to "Enjoin the Collection of Taxes Under Illegal Assessments." In the complaing, petitioner (plaintiff) alleged that he and his then wife had been advised by a letter dated October 28, 1977, of a balance owed on a prior assessment *222 of $273,701.66, and that immediately following the receipt of this letter he contacted a representative of the Internal Revenue Service who told him a mistake which had been made would be corrected. Petitioner (plaintiff) further alleged that he heard nothing further until January 24, 1978, when a collection officer of the Internal Revenue Service visited him and advised him that an assessment had been made of minimum tax. The complaint further alleged that various communications between petitioner and representatives of the Internal Revenue Service occurred and that a collection officer, during the course of an exchange of letters, advised him that the minimum tax should not have been assessed without the regular audit deficiency procedures which would have allowed him full appeal and conference procedures to stay collection. The complaint further alleged that amounts had been applied against the allegedly erroneous assessment from refunds otherwise due to the plaintiff for other years and other taxes.After these allegations, the District Court was requested to perpetually and forever enjoin the defendants from attempting to collect in any manner any sum whatsoever from plaintiff *223 under the authority of or purported authority of this illegal and void assessment, to order the void assessment expunged and to enter an order awarding plaintiff his cost and grant such other and further relief to which he was entitled.On September 30, 1982, the United States District Court for the Southern District of West Virginia entered an order reciting that on September 30, 1982, the plaintiff, his counsel, and the United States Attorney on behalf of the defendants appeared before the court. The order recited that the hearing was upon the plaintiff's verified complaint and representations of plaintiff's counsel of having given telephonic notice of the hearing to agents of the defendants. The order further recited that the court proceeded to receive evidence and to hear the argument of counsel and, based thereon, granted the relief sought in the plaintiff's complaint. It was further ordered and adjudged that the defendants were enjoined from attempting to collect in any manner any sum from plaintiff under the authority of any assessment of Federal income tax, penalties and interest for the years 1976, 1977 and 1978, until further order by the court. On June 20, 1983, respondent *224 filed a motion for leave to file an amendment to answer, which was granted, and on July 14, 1983, respondent's amendment to answer was filed. In his amendment to answer, respondent alleged that the deficiency as computed in the notice of deficiency had shown a deficiency of $328,702.56 by showing tax previously assessed of $794,842.12, which amount was overstated to the extent of $270,289.11, and that the correct deficiency in income tax due from petitioners for the year 1976 is $598,991.67. Petitioners, in their reply to this amendments to answer, alleged among other things that the amendment to answer takes away the credit for the minimum tax, ignores the accounts stated, but leaves the computation of minimum tax in the notice of deficiency as a part of the liability asserted therein and such tax must now be shown to the Court to be void and nonapplicable to this case or the Court would erroneously conclude that petitioners have conceded the claim for that void and nonapplicable tax, which they expressly do not. The reply further alleged that the minimum tax is unconstitutional. On August 17, 1983, petitioners filed a motion for leave to file an amendment to petition in which *225 they alleged that in accordance with section 6201(a)(1), respondent assessed $524,593.01 as income tax for the taxable year 1976 and in accordance with section 6204 assessed, on June 20, 1977, an additional amount of $273,701.66 as income tax for the taxable year 1976 and interest. Petitioners further stated in their motion that in the statutory notice of deficiency in this case respondent gave official notification to petitioners of $794,842.12 tax previously assessed. They further stated that the statutory notice reflected a minimum tax and then reflected a credit for the full minimum tax, thereby depriving petitioners of any ground on which to petition the Court with respect to that minimum tax.The motion further stated that respondent's amendment to answer served on petitioners on July 14, 1983, takes away the credit for the minimum tax but leaves the computation of minimum tax in the notice of deficiency as a portion of the liability asserted. Lodged with the motion of file an amendment to petition was a document entitled "Supplement to Petition" which was filed September 20, 1983, after the granting of petitioners' motion filed August 17, 1983. In this supplement to petition, *226 petitioners alleged error in the Commissioner's determination of a minimum tax in the amount of $243,418.42. As grounds for the alleged error, petitioners stated that the minimum tax imposed by section 56 was unconstitutional. The petition then alleged the various amounts that had been collected by respondent toward the payment of the minimum tax by crediting of refunds otherwise due them, and in the prayer requested the Court to determine that petitioners had made an overpayment of income tax for the calendar year 1976. On August 15, 1983, respondent abated the $270,289.11 of minimum tax which previously had been assessed and determined overpayment credits for the amounts collected on this assessment, the overpayments determined plus interest thereon amounting to $313,346.78, which was refunded to petitioners. On February 6, 1984, respondent filed a motion to substitute amendment to answer, attaching thereto the proposed amendment to answer, which motion was granted on February 6, 1984. In the substituted amendment to answer filed that day, respondent alleged (1) the previous assessment of the $270,289.11 minimum tax; (2) the suit brought by petitioner in the United States District *227 Court to enjoin respondent from collecting on authority of his assessment of the minimum tax; and (3) that on August 15, 1983, the tax had been abated and that all amounts collected under this assessment, plus interest thereon, had been refunded. Based on these facts, respondent alleged the correct deficiency in income tax due from petitioners for 1976 was $598,991.67, which represented an increase over the deficiency shown in the notice of deficiency of $270,289.11. In the substituted amendment to answer, respondent sought a determination of an increased deficiency of $270,289.11. The first argument made by petitioners in opposition to respondent's motion for partial summary judgment with respect to the minimum tax is in effect an argument that this Court lacks jurisdiction to redetermine the minimum tax. Petitioners state that no deficiency in minimum tax was determined in the notice of deficiency dated April 14, 1980, because that tax had been previously assessed and for this reason this Court should make no determination regarding the minimum tax. Petitioners fail to understand the jurisdictional limitations of this Court. Section 6212(a) provides for the sending of a notice *228 of deficiency in income tax to a taxpayer by respondent. Section 6213(a) provides that where a notice of deficiency has been sent to a taxpayer, the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. Section 6214(a) specifically confers jurisdiction on this Court to find an increased deficiency if claim therefor is asserted by respondent. Section 6512(a) provides that where respondent has mailed to a taxpayer a notice of deficiency under section 6212(a) and the taxpayer has filed a petition with the Tax Court within the prescribed time, no credit or refund of income tax for the same taxable year to which the petition relates shall be allowed or made, and no suit by the taxpayer to recover any part of that tax shall be instituted in any court, except as to overpayments determined by a final decision of the Tax Court.It is clear that where a notice of deficiency in income tax has been properly sent to a taxpayer and a petition timely filed, this Court has jurisdiction to redetermine the entire income tax liability of the taxpayer. Where the purported notice of deficiency determines an overassessment in income tax for a particular fiscal or calendar *229 year rather than a deficiency for that year, this Court has no jurisdiction to redetermine the tax for the year for which the overassessment was determined. See Paccon, Inc. v. Commissioner,45 T.C. 392 (1966). However, where the deficiency notice mailed to the taxpayer by respondent meets all the requirements of a statutory notice of deficiency and notifies the taxpayer of a deficiency in income tax and a timely petition is filed, the Court does have jurisdiction to redetermine the amount of deficiency or determine there is no deficiency or that there is an overpayment of tax. See Hannan V. Commissioner,52 T.C. 787 (1969). Since respondent has determined a deficiency in petitioners' income tax for the calendar year 1976, this Court has jurisdiction to redetermine the proper amount of income tax owed by petitioners and to determine an increased deficiency if one exists and claim therefor is made by respondent. This Court also has jurisdiction to determine an overpayment of tax if one exists and claim therefor is made by petitioners. We have previously held that the minimum tax imposed by section 56, arising from the deduction allowed with respect *230 to long-term capital gains, is a form of income tax. Graff v. Commissioner,74 T.C. 743, 767 (1980), affd. per curiam 673 F.2d 784 (5th Cir. 1982). Therefore, this Court does have the jurisdiction in this case to redetermine the minimum tax. Petitioners rely on our statement in Heasley v. Commissioner,45 T.C. 448, 458 (1966), to support their conclusion that we are not concerned with collection matters and thus should not grant respondent's motion for summary judgment. Petitioners argue that since respondent made an assessment of the minimum tax, the matter is only a collection matter. It is clear, not only in Heasley v. Commissioner,supra, as a whole but in numerous other cases that once a deficiency has been determined and this Court properly redetermines the amount of the tax liability, the amount of resulting deficiency may be computed under Rule 155. In that computation previous assessments, abatements, or rebates of payments may be considered. In fact, shortly after the statement with respect to collection matters was made in *231 Heasley v. Commissioner,supra at 458, we stated that in the recomputation under Rule 155 (then Rule 50), the deficiency should be computed showing the previous assessment that was based on the tax shown on the return as filed. There was no question of jurisdiction involved in Heasley v. Commissioner,supra.It was clear in that case that the notice sent to the taxpayer determined a deficiency in the taxpayer's income tax. We stated in Heasley v. Commissioner,supra at 456, that the situation as it exists at the date of the mailing of the notice of deficiency governs whether a statutory deficiency exists. We have jurisdiction to redetermine the deficiency in this case because a statutory deficiency existed when the notice of deficiency was mailed and a deficiency was determined in that notice. In the notice of deficiency, respondent determined the minimum tax at a lesser amount than the $270,289.53 shown on the Form 4625 that was attached to petitioners' return. For that reason a recomputation under Rule 155 will be necessary in this case. In determining the amount of the deficiency, the relevant considerations are *232 the initial assessment, the order of the District Court, the abatement of the tax, and the refund of the amounts collected on the tax which the District Court determined was erroneously assessed.When this Court has entered its decision as to the deficiency in petitioners' income tax for the year 1976, the amount of the deficiency determined may be assessed and collected.This Court is not prohibited from considering payments or refunds made subsequent to the mailing of the notice of deficiency in entering its decision as to the existence of a deficiency or an overpayment. The only substantive claim made by petitioners with respect to the minimum tax is that the minimum tax imposed by section 56 is unconstitutional because it was not properly explained to the Congress or to the President when it was enacted and because it effectively is an excise tax.This is the same issue that was before us in Graff v. Commissioner,supra, and in that case we held that the minimum tax imposed by section 56 is an income tax, that it was constitutional and did not violate the Equal Protection Clause of the 14th Amendment. In that case we called attention to the cases of *233 Estate of Kearns v. Commissioner,73 T.C. 1223 (1980); Buttke v. Commissioner,72 T.C. 677 (1979), affd. per curiam 625 F.2d 202 (8th Cir. 1980); Kolom v. Commissioner,71 T.C. 235 (1978), affd. 644 F.2d 1282 (9th Cir. 1981). In each of these cases some attack on the constitutionality of the minimum tax imposed by section 56 on an equitable ground was made and rejected. On the basis of the uncontested facts in this case, we hold that respondent is entitled to summary judgment that petitioners are liable for the minimum tax imposed by section 56 with respect to the $2,062,852.57 of capital gains deduction taken by petitioners on their Federal income tax return for the calendar year 1976. The amount of minimum tax may be recomputed under Rule 155 after the other issues in this case have been disposed of. At that time petitioners' proper tax liability (without regard to the minimum tax), which is used in the computation of the minimum tax, will be determinable. An appropriate order will be entered.
Footnotes
1. All Rules references are to the Tax Court Rules of Practice and Procedure.↩
2. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year here in issue.↩
3. Petitioners' argument is based primarily on the New Jersey law since the limited partnership, when formed, was a New Jersey partnership. However, although not clear from the record, it appears that the negotiations on which petitioners rely took place in Nevada.↩